(126 N. W. 100.)

---

THE CITIZENS' NATIONAL BANK OF SISSETON, SOUTH DAKOTA, A CORPORATION, v. P. BRANDEN.

Opinion filed March 31, 1910.

**Appeal and Error — Failure to Open Default — Discretion — Liberal Construction.**

1. Courts favor the trial of cases upon their merits, and, in a case where a trial court has refused to open a default and permit a defense to be made, the reviewing court will not only inquire as to whether the discretion of the trial court in denying the application has been soundly exercised, but will examine the facts shown for the

purpose of determing whether or not, in the interests of justice and right, and under the liberal construction generally given the statute permitting a court to open a default upon a proper showing, the default should not be set aside, and a defense upon the merits permitted.

### Re-Opening Default — "Surprise" — Neglect of Counsel.

2. In a case in which a party to an action employs counsel of good reputation and large experience, the neglect by such counsel of matters necessary to the ordinary procedure of the case is a "surprise" to the party, within the meaning of the statute entitling him to relief in such case.

### Opening Default — Excusable Neglect of Counsel.

3. The neglect of an attorney regularly retained to prepare and serve an answer in a case before the time for answering expires, when occasioned by intense absorption of mind in the conduct of the trial of another case, involving a charge of murder in the first degree, is "excusable neglect," within the meaning of the statute providing for the opening of a judgment entered on default of answer.

### Vacating Judgment — Showing of Good Defense on Merits — Prejudice.

4. Upon application to vacate a judgment entered by default, where the answer presented discloses a good defense upon the merits, and a reasonable excuse for delay occasioning default is shown, and no substantial prejudice appears to have arisen from the delay, the court should open the default and bring the case to trial.

### Discharge in Bankruptcy as Defense.

5. The defense of a discharge under the law of bankruptcy of a claim upon which action is brought is not regarded with any greater disfavor by the courts than any other legitimate and meritorious defense.

### Opening Default — Doubt Resolved in Favor of Application.

6. Where the circumstances shown upon an application to vacate a judgment entered by default are such as to lead a court to hesitate before it refuses to open the judgment, it is better, as a general rule, that the doubt should be solved in favor of the application.

Appeal from District Court, Richland County; *Allen,* J.

Action by the Citizens' National Bank of Sisseton, S. D. against P. Branden. From an order denying defendant's application to open a default judgment against him and permit him to interpose a defense, defendant appeals.

Reversed, with directions.

*W. S. Lauder* and *W. S. Lowry,* for Appellant.

*J. A. Dwyer,* for Respondent.

ELLSWORTH, J.   A summons and a complaint, alleging causes of
action upon three promissory notes, were served upon defendant and
appellant on October 23, 1908.   Shortly thereafter he employed W.
S. Lowry of Hankinson, as his attorney, and directed Mr. Lowry
to arrange for the services of and associate with him in the de-
fense of the action W. S. Lauder, an attorney of Wahpeton. Mr.
Lowry made the arrangement directed by his client with Mr.
Lauder, and paid him a retaining fee.   The understanding, between
the two attorneys was that Mr. Lauder should have exclusive
charge of the preparation and service of an answer.   Mr. Lauder
avers that he intended in good faith, within the time allowed by
law, to prepare and cause to be served on plaintiff's counsel a
formal answer to the complaint.   On November 17, 1908, in the
course of his professional duties, he went to Napoleon, Logan
county, and entered upon the defense of a criminal action, in which
the charge against the defendant was murder in the first degree. He
was continuously occupied in the trial of this case until December
4, 1908, during which period the entire labor of the defense de-
volved upon him, and his attention was so absorbed in this work
that he forgot about this action, and entirely overlooked the fact
that the time for answering therein expired on November 22, 1908,
and failed to prepare or serve an answer in this case, or to give the
matter attention in any particular whatever, until after the close of
the murder trial.   In the meantime, on November 27, 1908, the
plaintiff in this case applied to the district court for judgment in
default of answer, and pursuant to an order for judgment dated as
of that day final judgment herein was entered on November 30,
1908.   This judgment was docketed, and plaintiff caused execution
to issue, and levied it upon certain property of the defendant held
under attachment, and proceeded to sell the same.   On December
5, 1908, Mr. Lauder was informed for the first time that judgment
by default had been entered against the defendant.   On the 7th of
December thereafter he served upon plaintiff's attorney affidavits
showing facts substantially as narrated above, and on an order to
show cause applied to the district court to vacate and open up the
judgment and permit defendant to interpose a defense to the action.
With the affidavits was served a proposed answer in the action veri-
fied by the attorney, which alleged as a defense to all the notes de-
clared upon that, on the 18th day of June, 1908, after due and reg-
ular proceedings under the bankruptcy laws of the United States in

the United States District Court for the Northern Division of the District of South Dakota, a final order and decree of said court was entered whereby defendant was duly and completely discharged from all debts, claims, and liabilities contained in his schedules in said bankruptcy action, including, among others, the three notes sued upon in this case. The motion to open the judgment was strongly opposed by plaintiff, on the general ground of insufficiency of the application to warrant the relief applied for. Much stress was laid upon the point that no sufficient affidavit of merits was made on the application. A hearing was had before the district court on December 21, 1908, and thereafter, on December 29th, an order was made denying the relief prayed for by appellant. Afterward, on January 30, 1909, on application of appellant, the district court made an order granting leave to appellant to renew his application to open up and defend against the judgment in question. The showing made upon this application was the same as upon the former hearing, except that it included an affidavit of appellant containing, among other averments, one with reference to the merits of the defense that seems to be regarded as sufficient upon that point. A hearing on this second application was had on February 8, 1909, and the district court, on May 14, 1909, made its order, again denying the motion of appellant to open up and permit a defense upon the merits to plaintiff's action. From this order an appeal is taken; the single point of exception being that the court erred in making this final order.

Plaintiff contends, so far as the first order in concerned, that the showing made by appellant was entirely insufficient to warrant the opening up of a judgment entered by default under the conditions shown, and that all material points presented upon the second application were res adjudicata by reason of the order first made. But, aside from this point, and of that presented on the first application of the insufficiency of the affidavit of merits, appellant contends there was on neither application a sufficient showing of cause to warrant any action other than that taken by the district court. We have no doubt of the power of the district court to set aside its order of December 29, 1908, and to permit appellant to renew his motion as though made in the first instance. Whether or not the affidavit of merits made on the first application is sufficient we need not consider, as any deficiency that might then be said to exist was corrected upon the second application. We will therefore con-

sider whether or not the order of the district court of May 14, 1909, is warranted by the considerations presented upon the second hearing.

The district court is authorized, "in its discretion and upon such terms as may be just, at any time within one year after notice thereof, to relieve a party from a judgment, order or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect." Rev. Codes 1905, Sec. 6884. In New York, Wisconsin, Vermont, California, Indiana, North Carolina, and several other states statutes in terms exactly or substantially similar to this have been in force for many years; and the courts of these states are in substantial agreement in a general view of the spirit in which they are to be administered, which may be thus expressed: "That the statutes are remedial in character, intended to furnish a simple, speedy and efficient means of relief in a most worthy class of cases; that the 'discretion' referred to is not a mental discretion to be exercised ex gratia, but is a legal discretion, to be exercised in conformity to law." Freeman on Judgments (4th Ed.) Sec. 106. Or, in other words, it is a "legal discretion" which as declared by Chief Justice Marshall, is to be exercised in discerning the course and spirit of the law, which, when discerned, it is the duty of the courts to follow. "It is to be exercised, not to give effect to the will of the judge, but to that of the law." Tripp v. Cook, 26 Wend. (N. Y.) 152.

Pursuant to this construction, an appellate court will first examine a case for the purpose of determining whether or not under the facts shown the discretion vested in the district court has been arbitrarily or oppressively exercised; or, in other words, whether or not its order evinces an abuse of discretion. Unless such abuse of discretion appears, the order, if it opens and vacates a judgment entered by default for the purpose of permitting a meritorious defense, will not as a rule, be disturbed. In a case such as this, however, where the court has refused to open up a default and permit a defense upon the merits, even though the discretion of the trial court does not seem to have been exercised intemperately, arbitrarily, or in a manner palpably erroneous, the reviewing court will extend its inquiry further, and determine whether or not upon the facts shown, in the interests of justice and right under the liberal construction which the spirit of the statute seems to commend, it should disturb an order which has the effect of preventing a de-

termination upon the merits. "Courts almost universally favor a trial on the merits; and, when there has been a reasonable excuse shown for the default, there should be no objection to such a trial to those who are reasonably diligent." Barto v. Sioux City Electric Co., 119 Iowa, 179, 93 N. W. 268.

It is readily apparent that from the very nature of the case it is impossible, except in the most general terms, to frame a rule of procedure applicable to every state of fact presented by an application of this character. A general rule having unanimous support seems to be that, if the moving party makes a clear and unquestionable showing that he has a good defense or cause of action on the merits, of the benefit of which he has been deprived without fault on his part, the trial court cannot, in the exercise of a sound judicial discretion, deny him the relief prayed for; and, if it has done so, its action will be reversed. On the point, however, of what constitutes fault on the part of the moving party, and what may be said to constitute surprise, mistake, inadvertence, and excusable neglect, the cases are in irreconcilable conflict. The New York and North Carolina courts hold that, if the party himself is free from fault, the ignorance, forgetfulness, or neglect of his attorney will not be imputed to him to such degree as to prevent relief. The liberality of the courts of New York particularly in the matter of opening judgments has been so great as to provoke criticism by a learned text-writer, who declares that judgments in that state "seem to be regarded not as inviolate and enduring testimonials, but as temporary structures to be torn down, remodeled, or rebuilt whenever the builders feel competent to improve the original workmanship or design." Freeman on Judgments (4th Ed.) Sec. 111. In the courts of states other than the two named the neglect of counsel regularly employed and having charge of the case is uniformly treated as the neglect of the party, and no mistake, inadvertence, or neglect attributable to the attorney can be successfully used as a ground for relief, unless it would have been to the same degree excusable in the client. Some of the North Carolina cases regard ignorance or neglect on the part of the attorney as in the nature of "surprise" within the meaning of the statute, and afford relief from the judgment on that ground. Griel v. Vernon, 65 N. C. 76; Taylor v. Pope, 106 N. C. 267, 11 S. E. 257, 19 Am. St. Rep. 530.

It will be observed that the facts of this case do not show ignorance of rights, mistake of law, or wanton neglect, either on the

part of attorney or party. Appellant himself is without fault, as he diligently proceeded, on being served in the action, to employ experienced and competent attorneys, and placed the matter of preparing and presenting his defense entirely in their hands. Mr. Lowry, after making the arrangement shown to have been made with Mr. Lauder, might, we think, depend with reasonable assurance on the fact that the elder and more experienced counsel would, within the proper time, see to the preparation and service of an answer. Mr. Lauder, as is well known, is an attorney of high professional character and large experience, having an extended and widely diversified general practice. While it is urged that he might and should have prepared the answer, and served it before he entered on the trial of the case of homicide on November 17, 1908, yet it is apparent that in the discharge of the manifold duties of his practice he might, without undue hazard of his client's rights, have postponed such work to within five days of the expiration of time for answering. After that time his failure to prepare and serve the answer resulted not from carelessness or neglect on his part, but by intense absorption of mind in a matter which, from its nature, not only stirred his sympathies, and appealed strongly to his sense of humanity, but called as well for the undivided exercise of all his professional powers. While his failure to perform within the proper time the work he had undertaken in this case was still neglect, under the peculiar circumstances we think, in the exercise of a just and liberal discretion, it should be regarded as excusable. As suggested by counsel for appellant, neglect occasioned by guarding the life of a client is no less excusable than that resulting from watching at the bedside of a sick relative, or from the serious illness of the attorney himself, as in Nye v. Swan, 42 Minn. 243, 44 N. W. 9, and Tidwell v. Witherspoon, 18 Fla. 282. Further than this there is little question but that under the theory of the cases above referred to, any neglect in the ordinary procedure of the case, after a party had shown solicitude sufficient to impel him to employ counsel of Mr. Lauder's character, may be said to be a surprise to the party, from which he is entitled to relief by express terms of the statute. The rule of procedure announced by the Supreme Court of Minnesota in a case such as this appeals to us as liberal, sound, and calculated to promote justice; such rule being "that, where the answer discloses a good defense upon the merits, and a reasonable excuse

for delay occasioning default is shown, and no substantial prejudice appears to have arisen from the delay, the court should open the default and bring the case to trial." Barrie v. Northern Assurance Co., 99 Minn. 272, 109 N. W. 248.

The contention that a discharge of the debt sued upon by a court of bankruptcy is not a meritorious defense is in this state disposed of. Such defense is not more technical or less favored by the courts than that of the statute of limitations which is held by this court to be a meritorious defense. Wheeler v. Castor, 11. N. D. 347, 92 N. W. 381, 61 L. R. A. 746. The plaintiff in a trial upon the merits will be given opportunity to show a subsequent promise to pay the debt. In any event, the court could not, in an application of this character, inquire into the merits of the defense. Kitzsman v. Minn. Threshing Co., 10 N. D. 26, 84 N. W. 585. As the proceeds of the property taken upon attachment have been paid into court, and are held subject to the event of this action, no substantial prejudice can accrue to plaintiff by a trial on the merits. While the facts shown cannot be said to afford strong and unmistakable ground for relief, and the discretion of the trial court in denying the motion does not seem to have been harshly or arbitrarily exercised, we regard it as a case in which the circumstances are such as to lead a court to hesitate before it refuses to open the judgment; and in such case "it is better, as a general rule, that the doubt should be solved in favor of the application." Grady v. Donahoo, 108 Cal. 211, 41 Pac. 41.

The order of the district court is reversed, and it is directed to vacate the judgment dated November 27, 1908, and to permit the defendant and appellant to file the answer served herein, and to defend the action. The costs of this appeal will abide the event of the action. All concur.

MORGAN, J., concurs in the result.