BEATRICE I. LAKE,

*Plaintiff and Respondent,*

vs.

WILLIAM B. LAKE,

*Defendant and Appellant.*

(No. 2366; June 24th, 1947; 182 Pac. (2d) 824.)

378

For the Defendant and Appellant, the cause was submitted upon the brief and also oral argument of Albert D. Walton of Cheyenne, Wyoming.

For the Plaintiff and Respondent, the cause was submitted upon the brief and also oral argument of R. G. Diefenderfer and H. Glenn Kinsley, both of Sheridan, Wyoming.

380

## OPINION

PER CURIAM.

This is an appeal from an order refusing to vacate and set aside a default and judgment entered in the District Court of Sheridan County, in the case of Beatrice I. Lake, plaintiff, vs. William B. Lake, defendant. The parties will be named herein in the same manner as in the court below.

For a better understanding of the case it is perhaps advisable to set out the facts in so far as pertinent herein chronologically, as near as may be. The plaintiff is the daughter of H. Glenn Kinsley, one of the attorneys appearing in this case. She and the defendant were married in Colorado on February 6, 1939. They have a minor child, Elizabeth Irene Lake, born on January 9, 1941. The parties became, or perhaps at all times after the marriage, were residents of the State of California, plaintiff, however, changing her residence in 1946 as

mentioned below. On September 20, 1945, the plaintiff brought an action for divorce against the defendant in the Superior Court of the State of California, in and for the County of Santa Clara. The plaintiff alleged in substance as follow: Plaintiff and defendant were married as above mentioned; they separated about the 4th day of May, 1944; that the parties have a minor child as above mentioned; that plaintiff is and the defendant is not, a fit and proper person to have the care and custody of the minor child; that "during the whole of the married life of said parties, defendant pursued to and toward plaintiff a course of cruel conduct and inflicted upon plaintiff grievous mental pain and suffering, which has completely destroyed the legitimate objects of matrimony." For a second cause of action plaintiff alleged: "That for more than one year continuously last past defendant has wilfully and wholly neglected to provide plaintiff with the necessities of life, having ability so to do, and has compelled her to live upon the charity of her family." Plaintiff demanded alimony and attorneys' fees. The case came on for trial in the foregoing court on November 30, 1945; conclusions of law and of fact were made and judgment was rendered on February 20, 1946, plaintiff and defendant both appearing in person and by their attorneys. The court found that the allegations of the plaintiff mentioned as causes of action for divorce were not true; that plaintiff and defendant separated on November 25, 1944; that the defendant is a fit and proper person to have the custody of the minor child of said parties; that he should have the care, custody and control of her, and that jurisdiction as to such custody should be specifically reserved in the case. The court further found that all attorneys' fees, in the sum of $100.00, ordered by the court to be paid, had been paid; also that the allowance to plaintiff for her support and maintenance at the rate of $50.00 per month had been paid, and that no further

payments were to be made thereafter. The court accordingly adjudged and decreed, denying a divorce to the plaintiff; giving the care, custody and control of the minor child to the defendant; permitting the plaintiff to have the right to see and visit said child at all reasonable times and places; and "the court specifically reserves jurisdiction as to any future orders with reference to the care, custody and control of the above named minor child."

On July 13, 1946, the plaintiff, having in the meantime established her residence at Sheridan for more than 60 days, filed her petition for a divorce in the District Court of Sheridan County, Wyoming, and alleged, in brief, for a first cause of action, that the defendant had offered such indignities to the plaintiff as to render plaintiff's condition of married life intolerable; that the defendant and his mother had conspired together to make the life of plaintiff as unhappy and miserable as possible. As a second cause of action, plaintiff alleged that she and the defendant have not cohabited nor lived together as man and wife for a period of more than two years immediately last past, which failure so to do was not the fault of plaintiff. As a third cause of action plaintiff alleged "that the defendant has wholly failed and neglected to provide the common necessaries of life for the plaintiff for a period of more than one year immediately last past, which said neglect was not the result of poverty on the part of the defendant which the defendant could not have avoided by ordinary industry." As a further cause of action plaintiff alleged "that the defendant has wilfully deserted the plaintiff and failed and refused to reside with the plaintiff or provide the plaintiff a suitable place in which to live for a period of more than one year immediately prior to the filing of this action." Plaintiff prayed for the care and custody of the minor child of the parties and for alimony as well as attorneys fees

and costs of the case. Summons was duly issued and served upon the defendant in Weston County, Wyoming, where the defendant was then temporarily residing on July 13, 1946. The answer day was fixed as of August 10, 1946. In the meantime an answer and cross petition in the case was prepared, but which did not arrive at the office of the Clerk of the District Court of Sheridan County until August 13, 1946. On the previous day, namely, on August 12, 1946, the court entered a judgment by default against the defendant, and briefly speaking, found in favor of the plaintiff on all of her causes of action, including that defendant had offered plaintiff indignities to make her life intolerable since February 20, 1946. The court awarded the care, custody and control of the minor child to the plaintiff, and directed the defendant to deliver the child over into the plaintiff's custody and control. Alimony was awarded to the plaintiff in the sum of $75.00 per month and the further sum of $35.00 for the support and maintenance of the minor child, a total of $110.00 per month, to begin on July 13, 1946. The court also awarded the plaintiff as a property settlement between the parties the sum of $2,000.00, making that sum a lien on certain oil lands located in Weston County, Wyoming. The court further directed the defendant to pay plaintiff's attorneys' fees in the sum of $250.00.

On August 20, 1946, the defendant filed his motion to vacate and set aside the default and the decree above entered, and asked to be permitted to file his answer and cross petition herein, on the ground that without fault of the defendant, the answer, duly sent by registered mail, in ample time, was delayed in the transportation thereof. The answer and the cross petition, attached to the motion above mentioned and offered to be filed, was duly sworn to by the defendant on August 7, 1946, in Laramie County, Wyoming. Defendant alleged, stating the facts briefly, that the plaintiff has no

legal capacity to sue in that she was committed as mentally ill to a hospital in the County of Santa Clara, California, on April 29, 1943. He denied each and every allegation in the plaintiff's petition, referring to grounds for divorce. He set out in substance the decree in the divorce action between the parties hereto entered in the Superior Court of the State of California, in and for the County of Santa Clara, as above mentioned, attaching a copy of the judgment entered, and stating that the child is in California and has never been in Wyoming. He alleged that while plaintiff and the defendant had not cohabited as man and wife for a period of more than two years prior to the commencement of the action, that was not due to the fault of the defendant; that the parties lived in a happy manner together up to the month of March, 1944; that thereafter the plaintiff was induced by her father to leave the defendant and their small daughter, who was sick with measles at the time. He set forth the payments made to the plaintiff pending the divorce action in the California court. In his cross petition defendant alleged as his cause of action the fact that the plaintiff wilfully deserted the defendant and their minor child on or about the 4th day of May, 1944, without cause, provocation or excuse. The defendant, accordingly, prayed that plaintiff's petition be dismissed, that the defendant be granted a divorce, that the court should adjudge that it had no jurisdiction over the person of the minor child, and that he recover his costs and the disbursements herein made.

The motion to vacate, above mentioned, was also accompanied by an affidavit made by the defendant. He stated, in substance, the proceedings in the State of California in the Superior Court in and for the County of Santa Clara, and set forth the findings therein; that the answer and cross petition in this case was duly prepared on August 6, 7, and 8, 1946; that his attorney,

Mr. Walton, called up the postmaster while he was present in reference to when the answer and cross petition would arrive in Sheridan, Wyoming. He also stated: "The motion to set aside the default of the defendant and to set aside the judgment entered herein and permit defendant to file his answer and cross-petition herein, is made in good faith; that the defendant has a meritorious defense to said action and will interpose the same if permitted to file his answer and cross-petition herein, and will, as affiant is informed and verily believes, be able to establish said defense and cross-petition on the trial of this action by competent and overwhelming evidence." The motion was also accompanied by the affidavit of Albert D. Walton, attorney for the defendant in the case, stating that he is duly admitted to practice in all the courts of the State; that on August 5, 1946, the defendant came to Cheyenne to assist the affiant in preparing the answer and cross petition above mentioned; that he and his secretary worked on said answer and cross petition on the 6th, 7th and 8th day of August, 1946; that the papers relating to the divorce proceedings in California, above mentioned, were received about August 7, 1946; that on the 7th day of August, 1946, affiant "called William G. Haas, Postmaster at Cheyenne, Wyoming, and inquired of said William G. Haas how long it would take a first class registered letter, duly posted in the post office at Cheyenne, Wyoming, to be transmitted to Sheridan, Wyoming, and was informed by said William G. Haas that if a letter or first class registered mail should be mailed in the Cheyenne post office before eleven o'clock at night, that it would be dispatched during the night on a Colorado and Southern train leaving Cheyenne for Casper between midnight and one o'clock that night, and that it would arrive in Casper the following morning between seven and eight o'clock, if the train was on time, and would

then be picked up by the bus running from Casper to Sheridan and would reach Sheridan about noon that day." Affiant further stated that about 5:20 o'clock in the afternoon of August 8, 1946, he duly mailed at Cheyenne, by registered mail, the answer and cross petition in this case, to the Clerk of the District Court of Sheridan County; that he at that time asked the registry clerk at Cheyenne to dispatch the envelope with its contents on the evening train going to Casper that night, and that he was told by the clerk that his request would be complied with. "Affiant further says that said answer and cross-petition were attempted to be filed by affiant on behalf of defendant in good faith, and that affiant verily believes that defendant has a good defense to said action and has a good cause of action against plaintiff upon his cross-petition; that affiant was not guilty of any negligence in transmitting said answer and cross-petition to the Clerk of the District Court at Sheridan by the United States mail for the reason that the said answer and cross-petition and copy thereof should have arrived at Sheridan, Wyoming, by approximately 12:30 o'clock P. M. on the 9th day of August, 1946." The motion to vacate and set aside the default and judgment above mentioned was opposed by the plaintiff. Affidavits were filed both by plaintiff and her father, which, speaking briefly, denied that defendant has a meritorious defense, traversing statements made and defenses set up by the defendant, accusing defendant of misconduct toward plaintiff, and alleging that he and his mother ordered plaintiff out of his home and that he failed to support her. It is not necessary to set out the contents of these affidavits in detail, for the reason hereinafter mentioned.

On August 26, 1946, the motion to vacate the default and judgment above mentioned came on for trial. Without going into details it appeared in that trial that the envelope containing the answer and cross petition, in-

stead of having been mailed to go on the Colorado and Southern Railway to Casper and thence to Sheridan, was sent by another route, namely, by way of Sidney, Nebraska, and Alliance, Nebraska, and thence to Sheridan, and did not arrive at Sheridan, Wyoming, until about 7:00 o'clock in the evening of August 10, 1946. The assistant postmaster testified definitely that the letter above mentioned arrived at the post office at Sheridan, Wyoming, at approximately 7:15 P. M. of that day, and that notice thereof was placed in the post office box of the Clerk of the District Court of Sheridan County, within approximately fifteen minutes thereafter. The Clerk of the District Court testified, however, that he did not see the notice until the morning of August 13, 1946, and that he then presented the answer and cross petition to the judge of the district court. The defendant testified in the case, stating in substance, that he communicated with Mr. Walton, his attorney, two days after summons in the case was served upon him; he mailed the summons and copy of the petition to him, and that he was first in the office of his attorney on the 19th or 20th of July, 1946, and that in order to procure the papers relating to the California divorce case, he went to California and stayed there a few days' time; that these papers, however, did not arrive until August 7, 1946.

On September 23, 1946, the district court entered an order refusing to set aside the default and. judgment above mentioned. An appeal from that order was thereafter duly taken to this court.

On September 26, 1946, a motion was filed on behalf of the plaintiff that the defendant be cited for contempt for failure to pay the amounts of money awarded to the plaintiff as hereinbefore mentioned. An affidavit by Mr. Diefenderfer stated that "at present the said defendant is employed as an oil well driller in the

Osage Field in Weston County, Wyoming, where, as this affiant is informed and believes, and therefore alleges the fact to be, he is earning in excess of $300.00 per month; that by reason of his earning capacity, as hereinbefore set out, the defendant is well able to pay the money allowances made to the plaintiff herein." On September 27, 1946, an order was entered by the court citing the defendant to appear on October 10, 1946, why he should not be punished for contempt. On October 10, 1946, the defendant, without appearing personally, but appearing by his attorney, filed an affidavit in the above entitled matter setting forth, that he has no money or property wherewith to pay the amounts ordered to be paid; that only for three weeks he earned, in employment in California, immediately prior to July 1, 1946, a net amount of $220.00 per month, the remainder of the time a net amount of $213.00 per month; that prior to January 1946, he had an interest in an oil and gas lease in 120 acres of land in Weston County, Wyoming, but that he assigned his interest during that month; that he has no further interest therein, and that it is problematical whether the lease has any value; that he also owned an equity in 32 acres of land adjacent to the town of Monticello, Iowa, which he and his brother had purchased from their mother, and on which each of them had paid the sum of $2,000.-00. The payments made by the defendant consisted of $450.00 which had been the property of the plaintiff, and $1550.00 which had been saved by the defendant; that the purchase price of the land was $8,000.00; that the same was encumbered, had a mortgage against the same in favor of the Monticello State Bank, and that the mortgagee had threatened to foreclose the mortgage; that defendant has no other property; "that at all times prior to May 1944, affiant was supporting his wife, child and himself and was paying his share of the expenses and upkeep of the house in which they lived

with affiant's parents and his share of the food and for all of the clothing and other expenses of himself and family; that in September, 1945, plaintiff brought suit against defendant for a divorce in Santa Clara County, California, in which case defendant was required to employ lawyers and pay them for their services and was required to pay plaintiff's lawyers for their services and was required to pay the plaintiff $150.00 support money, all of which cost the defendant 26 days' pay as he was required to lay off from his work a total of twenty-six days, and it also cost affiant approximately $1000.00 in cash, and as a result thereof, when said action was ended affiant was about $500.00 in debt; that since the termination of said law suit in California the defendant has supported himself and child and it has cost him nearly all that he earned to do so, and as a result thereof, by selling U. S. War Bonds, in the face value of $375.00, he was able to liquidate his indebtedness." Further, "that affiant's parents have no ready money which they could loan to affiant with which to pay the amounts called for in said Decree, nor have they any property that is not mortgaged or pledged to secure either the said loan to said Monticello State Bank for the indebtedness hereinabove mentioned or mortgaged or pledged to Redwood City National Bank of Redwood City, California, to secure a mortgage indebtedness to said bank in the sum of approximately $14,000.00 owing by said William E. Lake and Mattie E. Lake (parents of defendant) and secured by a mortgage on their home in Palo Alto, California." Affiant further stated that he has helped drill an oil well in Weston County, Wyoming, commencing with July 1946; that he received no compensation whatever except groceries and provisions, but with the expectation to receive an interest in the oil, if produced, so as to be able to pay part on the mortgage on the land near Monticello, Iowa.

Notwithstanding the filing of this affidavit, the court on October 10, 1946, issued an order committing defendant to jail until the sum of $250.00 attorneys' fees and $225.00 unpaid alimony and support money should be paid. Defendant, however, has not been apprehended.

On December 9, 1946, on motion of plaintiff, the court made an order allowing the attorneys for plaintiff the sum of $350.00, in connection with the appeal herein, also the further sum of $50.00 for the expense of preparing and filing her brief in the Supreme Court, and the further sum of $100.00 for the expense of her said attorneys in going to Cheyenne, Wyoming, a total of $500.00, making a total allowance to that date of about $1125.00 aside from costs.

On January 17, 1947, plaintiff's attorneys filed in this court a motion to dismiss, on account of the fact that the defendant had not paid the sums which he had been ordered to pay by the court, stating, in affidavits attached, that he has been and will continue to be contemptuous of any court order. On February 5, 1947, a further motion was filed in this court to set the motion to dismiss the appeal herein for immediate hearing; that if that motion should be denied that this court make an order compelling the defendant to pay the plaintiff the sums allowed by the district court as above mentioned. Thereupon this court, unable to set the case for immediate hearing upon the motion to dismiss the appeal, directed the defendant to pay the sum of $200.00 into the office of the clerk of this court to be paid to plaintiff's attorneys, all other matters in connection therewith being reserved for the further consideration of this court. The $200.00 above mentioned has been duly paid by defendant. The defendant filed a resistance to the motion to dismiss, supported by the affidavit of the defendant, denying that he has been or will con-

tinue to be contemptuous of any court proceeding, stating that he is unable to comply with the awards made by the trial court against him; that he is willing to support his wife in his own home, but cannot maintain two households. The contents, other than already mentioned, of affidavits filed in this court, and in the court below, either by the plaintiff, or on her behalf, or by the defendant, are not important so far as the present appeal is concerned, and it would not subserve any good purpose to set them out. The case has now been argued and submitted both on the motion to dismiss the appeal and upon the merits. On the Motion to Dismiss the Appeal.

Counsel for plaintiff have insisted on the motion to dismiss the appeal, both in their brief and on oral argument. Counsel for defendant did not mention the motion in his brief and it is claimed that this may be taken as an admission that no defense thereto exists. We do not so construe the attitude of counsel for defendant. He did not need to mention the motion in his brief on the main case. He might have filed a reply brief answering plaintiff's brief on that point, but that was not essential unless the court had ordered that to be done.

It is contended that the motion to dismiss should be sustained on the ground that the defendant has not complied with the orders of the district court allowing alimony, expenses and fees for attorneys in connection with the case below and on this appeal. The fact of nonpayment is not disputed except in so far as already mentioned, the defendant claiming that he is unable to make the payments. We are cited by counsel for plaintiff to many cases from this and other jurisdictions. In Duxstad vs. Duxstad, 16 Wyo. 396, 94 Pac. 463, 15 Ann. Cas. 228, it was held that this court may require the husband, defendant in error, to pay a reasonable attorney's fee to enable the wife to prosecute her

appeal; that such relief is not a matter of course, but only on a showing of the necessities of the wife and the financial ability of the husband, and that the appeal has been taken in good faith. In Snow vs. Duxstad, 23 Wyo. 82, 127, 147 Pac. 174, 187, it was said that the trial court has the right to make an allowance to the wife pending the appeal in the supreme court. In Brown vs. Brown, 22 Wyo. 92, 135 Pac. 801, it was again held that this court has the right to compel a husband to pay an attorneys' fee for the wife in connection with an appeal to this court. Subsequently, in the same case, in 22 Wyo. 316, 140 Pac. 829, the court directed that unless the order was complied with within the time fixed by the court the case appealed by the husband would be dismissed. See also Burt vs. Burt, 48 Wyo. 19, 41 Pac. 2d 524. But while the power to dismiss exists, it does not follow that it should be exercised. The trial court could not my making an order in this case, deprive this court of jurisdiction to hear an appeal properly brought to this court. The exercise of the power to dismiss the appeal, then, is necessarily discretionary and depends on the circumstances in each particular case. See Philpott vs. Philpott, 164 Okla. 266, 23 Pac. 2d 641. We are cited to the case of Farrar vs. Farrar, 45 Calif. App. 584, 188 Pac. 289. In that case it was held that while a court may not punish a husband for contempt or dismiss his suit if he is unable to pay or earn the amount awarded his wife, nevertheless, the court will refuse to proceed with the action unless he has made the payments ordered by the court, and that "if a husband comes into court for a divorce, complaining of his wife, * * * he must expect to furnish her with money to enable her to make her defense, and likewise money wherewith to support herself during the litigation, and his poverty or inability to earn the money is no excuse." The action for divorce in that case was instituted by the husband and stress was laid on that fact. The de-

fendant in this case did not institute the action for divorce, and is merely complaining that he was unjustly deprived of his right to defend, and we have not been cited to any cases when that has been true in which an appellate court has dismissed the appeal. Moreover, the case at bar is sui generis by reason of the fact that the action therein was instituted only a few months after plaintiff's action for divorce in California was terminated, in which some of the main issues adjudicated in favor of plaintiff in this case were adjudicated against the plaintiff. If the rule of the California case just cited is sound, the denial of rights therein mentioned may well, in a case such as before us, be applied as nearly as possible to plaintiff rather than to defendant. Courts in general have been indulgent toward the wife, and ordinarily, doubtless rightly so, and it was upon that theory that we ordered the defendant to pay $200.00 before proceeding with this appeal, but each case must be decided upon its own facts. We should not be asked to go so far as to hold that a husband is outside the pale of the law when he asks for justice and does the best he can, in a case such as this in connection with the payment of alimony and attorneys' fees. Marital troubles, heart breaking and apparently insolvable, are unfortunately too frequent. We cannot solve them, much as we should like to do, and though we cannot quell our sympathies, an earnest appeal to which was made by counsel for the plaintiff, we must guard ourselves so as not to lean too far in favor of one or the other of the parties, but, as has been said, we must at least attempt to "keep the scales of justice in equipoise." In Boyden vs. Boyden, 50 R. I. 326, 147 Atl. 621, 66 A. L. R. 214, the court said: "Alimony and allowance should be ordered upon evidence that a husband himself has means of compliance or a capacity to acquire them if he makes reasonable efforts. The needs and circumstances of the wife and

child, however dire, do not furnish a suitable test of the amount the husband should pay, though the court may sympathize with the wife or doubt the husband's honest desire to support his family. The court must be satisfied that the husband can comply with the decree. * * * It may be unfortunate for petitioner that she has been married to an improvident husband, but she is entitled to demand from him as a matter of right only such support as he is reasonably able to furnish from his property or earnings." In the case of Merritt vs. Merritt, 220 Calif. 85, 29 Pac. 2d 190, the syllabi in the case read as follows: "Alimony should be ordered only upon evidence that husband personally has means of compliance or capacity to acquire means. * * * Wife is entitled to demand from divorced husband only such support as he is reasonably able to furnish from his property or earnings." See also Timanus vs. Timanus, 178 Md. 640, 16 Atl. 2d 918. As far as we can tell the defendant has no property out of which he can raise any money to pay the alimony and the attorneys' fees and expenses which he was ordered to pay by the trial court. There is nothing in the affidavits of plaintiff or her attorneys which in any substantial degree contradict the affidavit of defendant in regard thereto. The title to the property near Monticello, Iowa, appears so involved and the land seems so encumbered that it is difficult to see how defendant can raise any money on the equity, if any, which he holds therein. The affidavit of Mr. Kinsley supports that conclusion. The defendant assigned whatever interest he had in some oil and gas leases in Weston County, Wyoming, long before this action was instituted. Even if he still has some potential interest therein the value, as we know, but too frequently consists mainly of hopes and not of substance. Defendant paid plaintiff alimony in connection with her California divorce. He states that his outlay in connection with that case was $1000.00. He paid

plaintiff's attorneys and his own. A few months after that case was decided against the plaintiff, the defendant is asked to go through the same thing again, only on much harsher terms. The record is not clear as to defendant's earnings. His work in the Osage oil fields was of short duration for he left the state, doubtless in fear of imprisonment by the trial court. By reason of his expenses in connection with this case, including the expenses for trips to Cheyenne and a trip to California, he probably saved nothing from his earnings in the Osage oil fields, even if he received any compensation, which he denied, as already stated, giving his reasons therefor. We cannot say that he should not have incurred these expenses, at least under the circumstances in this case. Plaintiff's petition filed in the district court of Sheridan County alleged that defendant was earning about $250.00 per month. The defendant denied that. As we recollect, counsel for the parties disagreed as to whether he is earning $250.00 or $200.00 per month. For the purposes of this case it cannot make a great deal of difference which sum we assume to be correct. Earnings nowadays are not what on their face they appear to be. There must, first, be deducted what the federal government takes for income taxes. In view of that fact and the further fact of the high cost of living at the present time, it is difficult to see how, out of his earnings, defendant can pay any great amounts for alimony and expenses and fees for attorneys, and at the same time live and support his minor child, and the latter is entitled to at least as much consideration as is given to the plaintiff, nor can the court deprive defendant of his own common necessities of life, even though he can pay nothing to or for his wife. Boyden vs. Boyden, supra. 27 C. J. S. 957. Nor can the fact that the parents of the defendant can help him and his child financially or otherwise, be con-

sidered in measuring his ability to pay. Bungay vs. Bungay, 179 Wash. 219, 36 Pac. 2d 1058.

On July 13, 1947, the awards made by the trial court, at the behest of counsel for plaintiff, against the defendant, will have accumulated to $1650.00, aside from costs. Leaving out of consideration the time the defendant worked in the Osage oil fields, for the reason above stated, and assuming, as perhaps we reasonably may from the record before us, that from October 10, 1946—about which time he probably left the state—he earned $200.00 net per month, after deduction of income taxes, he will have earned to July 13, 1947, the sum of $1800.00 If he had paid the $1650.00 he would have left the sum of $150.00 out of which to support himself and his minor child for the period of nine months. Taking all the facts in the case into consideration we do not feel warranted in dismissing the appeal herein. It is clear, we think, that if we should do so we should be guilty of an abuse of judicial discretion. The motion to dismiss the appeal will, accordingly, be overruled without further allowance to the plaintiff or her attorneys other than what we have already made.
On the Merits.

The motion to set aside and vacate the default and judgment herein was filed during the same term of court in which the judgment was entered. In such case the court has inherent power to do so, to be exercised in the sound discretion of the court. McGinnis vs. Beatty, 28 Wyo. 328, 204 Pac. 340; Kelley vs. Eidam, 32 Wyo. 271, 231 Pac. 678; Shaul vs. The Colorado Fuel & Iron Co., 46 Wyo. 549, 30 Pac. 2d 478. Sec. 3-3801, Wyo. Compiled Statutes of 1945, Subdivision 7, empowers the court to vacate a judgment after the term for unavoidable casualty or misfortune preventing the party from prosecuting or defending. The power of the court in this respect should be exercised

at least as liberally when the motion to vacate is made during the term as when it is made after the term, and probably more liberally. Hence, some of the decisions hereinafter cited, referring to the exercise of the power of the court under statutes similar to Sec. 3-3801, supra, should be directly in point herein. Counsel for plaintiff contend that the court in this case did not abuse its discretion, and that no sufficient and legal excuse for not filing the answer and cross petition in time has been shown. The discretion above mentioned is an impartial discretion, guided and controlled in its exercise by fixed legal principles; it is a legal discretion to be exercised in conformity with the spirit of the law and in a manner to subserve and not to defeat the end of substantial justice, and for a manifest abuse thereof it is reviewable by the appellate jurisdiction. Thompson vs. Connell, 31 Ore. 231, 48 Pac. 467; Snyder vs. Consolidated Highway Co., Inc., 157 Ore. 479, 72 Pac. 2d 932; Riskin vs. Towers, 24 Calif. 2d 274, 148 Pac. 2d 611, 153 A. L. R. 442. 49 C. J. S. 554; 31 Am. Jur. 267. In The Citizens' National Bank vs. Branden, 19 N. D. 489, 126 N. W. 102, 27 L. R. A. N. S. 858, it appears that an attorney failed to appear in time on account of misfortune and unavoidable casualty. The trial court refused to set aside a default entered in the case and the supreme court, after discussing the question of discretion of the court, said in part: "In a case such as this, however, where the court has refused to open up a default and permit a defense upon the merits, even though the discretion of the trial court does not seem to have been exercised intemperately, arbitrarily, or in a manner palpably erroneous, the reviewing court will extend its inquiry further, and determine whether or not upon the facts shown, in the interests of justice and right under the liberal construction which the spirit of the statute seems to commend, it should disturb an order which has the effect of preventing a

determination upon the merits. 'Courts almost universally favor a trial on the merits; and, when there has been a reasonable excuse shown for the default, there should be no objection to such a trial to those who are reasonably diligent.' Barto v. Sioux City Electric Co. 119 Iowa, 179, 93 N. W. 268." The case is cited with approval in the Nebraska cases hereinafter mentioned. It is, of course, true that the discretionary power should not be exercised to relieve against slovenly preparation or careless trial of causes or unduly impair the attribute of certainty and finality which should attend judgments, and the latter should not be annulled except upon due consideration based upon a clear showing. 1 Freeman on Judgments 580, Sec. 292. The last consideration is perhaps more important in case a judgment is sought to be opened after the end of the term than it would be if it is sought to be opened during the term. Judgments by default are not favored. Courts prefer that cases be tried upon the merits. "It is generally recognized that the discretionary power of the court should be liberally exercised in furtherance of justice, to the end that cases may be disposed of upon their merits rather than upon technicalities or fortuitous circumstances." Freeman, supra, Sec. 292. 31 Am. Jur. 265, Sec. 715. Riskin vs. Towers, supra. In Lunt vs. Van Gorden, 225, Iowa 1120, 281 N. W. 743, the court refused to construe the term "unavoidable" strictly, saying that to do so would require the overruling of a multitude of previous decisions. In Barrie vs. Northern Assurance Co., 99 Minn. 272, 109 N. W. 248, the court stated: "The law is now well settled in this state that where an answer discloses a good defense upon the merits, and a reasonable excuse for delay occasioning the default is shown, and no substantial prejudice appears to have arisen from that delay, a court should open the default and bring the case to trial. The exercise of the discretion of the court ought

to tend, in a reasonable degree at least, to bring about a judgment after trial on the merits." In the case at bar it appears that the answer offered by the defendant discloses a meritorious defense. That also appears from his affidavits. There was no delay to amount to substantial prejudice, as the motion to vacate was filed within eight days after the default and judgment was entered herein. The rule of the Minnesota case above mentioned was adopted by the court in The Citizens' National Bank vs. Branden, supra. Freeman on Judgments, supra, Sec. 292, supported by numerous authorities, states the significant rule that "any doubt on the facts as to the propriety of setting aside a judgment should be resolved in favor of the application." To the same effect is Black on Judgments, Second Edition, Sec. 354. Further, too, it is said in 31 Am. Jur. 267, that "in a case of reasonable doubt, where there has been no trial upon the merits, this discretion is usually exercised in favor of granting the application so as to permit a determination of the controversy upon the merits." In Hall vs. McCan, 62 Ore. 556, 126 Pac. 5, the court, recognizing that each case must be determined upon its own facts, said: "As a general rule, however, in a case where, as here, the application is made so immediately after default entered as that no considerable delay to the plaintiff is to be occasioned by permitting a defense on the merits, the court ought to incline to relieve. The exercise of the mere discretion of the court ought to tend, in a reasonable degree, at least, to bring about a judgment on the very merits of the case." That is a quotation adopted by the court from the early case of Watson vs. S. F. H. B. R. R. Co., 41 Calif. 17. To the same effect are Hanthorn vs. Oliver, 32 Ore. 57, 51 Pac. 440, 67 Am. St. Rep. 518; Capalija vs. Kulish, 101 Ore. 666, 201 Pac. 545. In Lacy vs. Citizens' Lumber & Supply Co. et al., 124 Nebr. 813, 248 N. W. 378, the court said: "Ordinarily, where a

judgment has been entered by default and a prompt application made at the same term to set it aside, with a tender of an answer disclosing a meritorious defense, the court should, *on reasonable terms*, sustain, the motion and permit the cause to be heard upon the merits." The rule was reiterated and approved in the late case of Barney vs. Platte Valley Public Power and Irrigation District, (Nebr.), 23 N. W. 2d 335.

These general rules, so stated, would seem to indicate unerringly as to what should be done in the case at bar. In any event we can, in the light of these rules, read with greater clarity the rule announced in a number of cases involving unavoidable casualty and misfortune similar to the case at bar. In the case of Chicago, R. I. & P. Ry. Co. vs. Eastham, 26 Okla. 605, 110 Pac. 887, 30 L. R. A. N. S. 740, it appears that the answer day in the case was July 21, 1908. On July 20th counsel for defendant, in another county, duly mailed a motion in the case directed to plaintiff's petition. On account of miscarriage of the mails the motion arrived a day too late, and while the court was trying the case. It refused permission to file the motion at that time. That was held error and the cause was reversed. The court said: "Every litigant is entitled to his day in court. Being free from fault no mere accident should foreclose against plaintiff his right to have his claim against the defendant tried and determined; but the scales of justice should be held in equipoise, and the defendant is likewise entitled to have its day in court, and to have its defense against the claim of plaintiff heard, and no accident not its fault should foreclose this right on its part." Here the court clearly recognized that a miscarriage of the mails is not the fault of a litigant, and that a plea in a case, if duly mailed in time so that it would reach the court in the ordinary course before default is entered, is mailed in sufficient time. In view of the holding of this case and in those previously cited, it is

not necessary to consider the contention that the defendant and his attorney were not diligent prior to that time, although, as a matter of fact, since papers from the California Court were necessary to be obtained, it would seem that counsel did not unduly delay in preparing an answer herein.

In Yates vs. Guthrie, 119 N. Y. 420, 23 N. E. 741, the syllabus reads as follows: "A judgment by default will be vacated where it positively appears from the affidavits of defendant and his attorney, and from the postmark on the envelope, that the answer was mailed on the evening of the last day for answering, though it arrived so late that, according to the usual time of transmission, it would appear to have been mailed after that day." In Auto Lighter Co..vs. Wickes, Hughes & Co., 99 N. Y. S. 611, it does not appear when the answer day was, but it appears that the answer was mailed so that it should have arrived in time. It was held that a judgment on default should be set aside. In Brown vs. Briggs, 1 How. (N. Y.) 152, summons was served on February 27th. It was required to be answered in twenty days. A demurrer was duly mailed on March 18th, which was the day before the answer day. It was not received in time and a default judgment was entered on March 20th. It was held that the demurrer was properly served in time, and the default judgment was set aside. In Radcliff vs. Benthuysen, 3 How. (N. Y.) 67, summons was served on June 16th. The answer day was in twenty days thereafter. A plea was properly mailed on July 5th which was the day before the answer day. It was not received until July 13th. It was held that the plea was served in time, and that the default judgment should be set aside. Corning vs. Tripp, 1 How. 14, is similar in effect, and the holding of these cases is also fully sustained, and the same rule applied in Boyd vs. Williams, 70 N. J. L. 185, 56 Atl. 135; Loeb vs. Smith, 1 Mont. 87; Williams vs. Richmond &

D. Ry. Co., 110 N. C. 466, 15 S. E. 97; Malone vs. Big Flat Gravel Mining Co., 93 Calif. 384, 28 Pac. 1063; Clark vs. Oyharzabal, 129 Calif. 328, 61 Pac. 1119. See also annotation in 30 L. R. A. N. S. 740. 31 Am. Jur. 284. In Williams vs. Richmond & D. Ry. Co., supra, the court said: "The right to relief against a judgment rendered under a technical rule of practice, must not be made to depend solely upon the movements of the sand in the hourglass, or the uncertain progress of the Judge in disposing of the docket, but upon sound principles of equity and justice. Where there is doubt as to the proper method of disposing of such an application, it is always safe, when it can be done without violating the law, to have an action tried upon its merits, rather than determined upon a technicality." Closely in point herein, also, are State vs. Jager, 19 Wisc. 235, and Smith vs. Rawlings, 83 Va. 674, 3 S. E. 238, in which it appears that an attorney started in time to attend the trial of a case of his client, but did not arrive in time on account of a delay of the trains. Judgment by default was taken in the meantime. These judgments were vacated on a motion. So, too, in Capalija vs. Kalish, supra, the failure to file an answer in time was excused by reason of defendant meeting with foul weather while he was on a fishing trip, and the court's refusal to set the default aside was reversed by the appellate court. See also Black on Judgments, Second Edition, Sec. 337.

The holding of the trial court herein was contrary to all the foregoing cases. We are unable to see how we could be justified in ignoring them and not following them, particularly in view of the general rules already set out. It is claimed that it was the practice in Sheridan County to hear a case on the Monday following the Saturday on which the defendant fails to appear. We do not think that this practice should be permitted to overrule the rules and principles of law

above mentioned. It is also claimed that defendant should have engaged an attorney at Sheridan, or near Sheridan, familiar with the practice there instead of having as his counsel Mr. Walton, a resident of Cheyenne. However, Mr. Kinsley, one of the counsel for his daughter, plaintiff herein, is a prominent attorney at Sheridan, a city of not over fifteen thousand population, and with a limited number of attorneys. Experience teaches us that in view of that fact, defendant might have had difficulty in engaging an attorney at Sheridan or near Sheridan, let alone one of his choice. Furthermore, an attorney at law, duly admitted in this state, is entitled to practice in all of its courts, and we think that the bar of the state would be surprised if we should lay down a rule as narrow as that contended for by counsel for the plaintiff. Again it is claimed that Mr. Walton should not have used the "old fashioned" mail service, but should have used the air mail service. We do not think that the regular mail service is as old fashioned as counsel claim. If the air mail service had gone amiss, with the answer on board, it would doubtless have been claimed that it is so new that counsel for defendant should not have taken the chance to use it. It is also contended that counsel for the defendant could have telephoned to the Clerk of the District Court or the Judge, and could have obtained an extension of time. Of course, by the use of hindsight, we can easily determine that a certain thing could have been avoided, but we think that the rule to be applied is that of ordinary, reasonable foresight. See Barto vs. Sioux City Electric Co., 119 Iowa 179, 93 N. W. 268. The answer was mailed in ample time so that if the mail had not been miscarried it would have reached the office of the Clerk of the District Court a day prior to the time that it was necessary to be filed. Judging the situation by reasonableness, Mr. Walton was not, we think, even though the mail is occasionally delayed, required to

anticipate the fact that it would be delayed so long, nor could he anticipate that the mail would be sent by a different route than that promised by the mail clerk in Cheyenne, Wyoming, and, of course, he could not in any manner anticipate that the mail would not be taken out of the post office by the Clerk of the District Court for sixty hours after it actually arrived at Sheridan. If it had been presented to the trial court on Monday morning we have no doubt that it would have refused to hear the case on that day. The position of counsel for the plaintiff is, in short, that a defendant fails at all times at his peril to answer at the time set by the statute, but the duty to answer as so fixed is but one of the rules of law. It must be considered in connection with other rules also well settled. The latter cannot be ignored. Counsel for plaintiff also claim that the fact that the answer attempted to be filed in this case was accompanied by a cross petition, takes the matter of setting aside the default completely out of the court's power. No cases to that effect are cited. We see no merit in the contention. The defendant had the right to file both a cross petition as well as an answer. It is not conceivable that the exercise or attempted exercise of the one right could destroy the exercise of the other not inconsistent therewith. Counsel for plaintiff also contend that because of the fact that the answer contains impertinent and scandalous matter, namely, by alleging that the plaintiff had no legal capacity to sue by reason of mental illness, the case should not be re-opened. No authorities are cited. We are unable to see upon what theory we would be warranted in so holding.

It was said in Kelley vs. Eidam, 32 Wyo. 271, 231 Pac. 678, that in order to open a judgment by default it must appear that "if the judgment is allowed to stand, an injustice will be done. It should not be done for light and trivial causes." An examination of the case will readily disclose why this language was used

by the court, the question involved being merely whether the case should have been brought by plaintiff under a particular name rather than another. In substance what the court said seems to mean nothing more than that it must appear that there is a meritorious defense as generally expressed by the courts. It is contended by plaintiff that no meritorious defense has been shown, and that the facts herein reveal that substantially the same judgment would be entered on a retrial as has already been entered heretofore. Counsel say that the affidavits of the plaintiff and of Mr. Kinsley, filed herein, make evident the absence of a meritorious defense on the part of the defendant; that they disclose that he has been guilty of misconduct toward plaintiff, and that he has failed to support plaintiff for two years. If we understand the theory of counsel correctly, they seem to contend in substance that since the affidavits show the lack of a meritorious defense of the defendant, the trial court had the right to so find, and that its finding thus made is final. It is quite clear, we think, that counsel have misconceived the requirement of the extent and manner of showing a meritorious defense on an application to set aside a judgment by default. For that reason we did not set out the detailed facts set forth in the various affidavits, by and on behalf of the plaintiff. In Elstermeyer vs. City of Cheyenne, et al., on rehearing, 57 Wyo. 421, 120 Pac. 2d 599, the court cited a Colorado case, in which it was said, among other things: "It is sufficient to show that the defense is prima facie meritorious, and must be stated so that the court will be enabled to see that it is not frivolous. * * * It is said that, when a sworn answer is filed, it will be accepted as a sufficient affidavit of merits, and it will be examined by the court only to determine whether it is frivolous and not to ascertain whether it will prevail if established on a new trial, unless it is apparent that it cannot possibly prevail." That the

answer offered in the case at bar, and the affidavit of merits are not frivolous, is too clear for argument. See 49 C. J. S. 551, 552. In the same volume, Page 545, it is said that the "existence of a meritorious cause of action or defense, as shown by the moving party's affidavit of merits, cannot be controverted by counter-affidavits." So it is stated in 1 Black on Judgments, Second Edition, Sec. 351: "If the proposed plea or answer is investigated at all, on the motion to vacate or open the judgment, it is only to the extent of ascertaining whether the facts set up, assuming their truth, constitute a good and meritorious defense. Those facts must of course be proved on the subsequent trial, but they are not in issue on the motion to open or set aside the judgment. Hence, generally speaking, counter-affidavits cannot be filed, nor counter evidence heard in any form as to the matters alleged as constituting a defense to the original action." 1 Freeman on Judgments, 5th Ed., Sec. 289, states: "But the hearing of evidence is confined to the question, whether the judgment has been taken through the inadvertence, mistake, surprise or excusable neglect of the defendant. The applicant is not required to make more than such a prima facie showing of merits as arises from his own affidavits. The code did not intend that there should be two trials of the merits. Therefore the defendant is not required to prove his defense, as he would at the trial, nor can his affidavits of merits be controverted."

It would perhaps not be necessary to say anything further in this case were it not for the fact that counsel for the plaintiff have discussed all the various matters involved herein in an attempt to show how futile it would be to open up and vacate the judgment herein. And the trial court, too, judging from its opinion, set out in the brief of plaintiff, considered all of these matters and concluded in view thereof that it would be needless to open up and vacate the decree. So we can-

not overlook, and in a measure are constrained to discuss, to some extent at least, the main matters involved in this case.

One of the main questions herein, though incidental to a divorce, relates to the custody of the minor child of the parties, who, as appears to be agreed, is in California and has never been in this state. As already heretofore stated, the defendant, in his answer, asked the trial court to hold that it has no jurisdiction over the person of the child. It had awarded the custody of her to the plaintiff. A few months previously the custody had been awarded to the defendant by the California court, with full jurisdiction of the parties herein and of the minor child. The California court stated: "The court specifically reserves jurisdiction as to any future orders with reference to the care, custody and control of the above named minor child." Thus the decree of the District Court of Sheridan County appears to come into direct conflict with the California court, and without having jurisdiction over the child, it directed the defendant to deliver the custody thereof to the plaintiff. Hence the court apparently placed the defendant in the unenviable position of violating either the direction of the District Court of Sheridan County or that of the California court, and seemingly placed him in jeopardy of being in contempt of either the one court or the other. Counsel for plaintiff say that the custody of a minor child may always be inquired into by the court, and that the order of the California court could not control the action of the district court of Sheridan County on this matter. We are cited to Linch vs. Harden, 26 Wyo. 47, 176 Pac. 156; Stirrett vs. Stirrett, 35 Wyo. 206, 248 Pac. 1; Urbach vs. Urbach, 52 Wyo. 207, 73 Pac. 2d 953, 113 A. L. R. 889. These cases have no bearing in the case at bar. The cases dealing with the custody of a child are very numerous. See Annotations in 20 A. L. R. 815; 72 A. L. R. 441; 116

A. L. R. 1299; 160 A. L. R. 400. In 43 C. J. S. 52, it is stated: "Jurisdiction to control, and determine and regulate the custody of, an infant is in the courts of the state where the infant legally resides, and the courts of another state are without power in the premises, and cannot obtain jurisdiction for such purpose over persons temporarily within the state." 2 Beale Conflict of Laws states in Sec. 144.3: "Since custody of a child by one parent carries with it domicil and a domestic status, jurisdiction to give the child to one parent or the other depends in principle on the domicil of the child; and a state which is the temporary residence of the child, not the domicil, cannot confer the right to custody. A fortiori a decree for custody rendered in a state where the child is neither resident nor domiciled is void for lack of jurisdiction." Nelson Divorce and Annulment, Second Edition, Sec. 15.32-15.33, states as follows: "To enter a valid judgment or decree a court must not only have jurisdiction of the parties but it must also have jurisdiction of the subject matter. The subject matter involved in a proceeding to determine the question of custody of minor children of parties to a suit for divorce is the children themselves, and if the court does not have jurisdiction of the children it does not have jurisdiction of the subject matter to determine the right of custody as between the parties even though it does have jurisdiction of the parties, who are the parents of the children. A proceeding to determine custody of a minor child partakes of the nature of an action in rem, the res being the child's status or his legal relationship to another. * * * When the child is within the local jurisdiction the court has the power to award its custody to one parent or the other; when it is not within that jurisdiction no such power exists." The foregoing text is fairly supported by the following cases: State ex rel. vs. Larson, 190 Minn. 489, 252 N. W. 329; Dorman vs. Friendly, 146 Fla. 732, 1 So. 2d

734; Kenner vs. Kenner, 139 Tenn. 211, 201 S. W. 779, L. R. A. 1918 E. 587; Burrowes vs. Burrowes, 210 N. C. 788, 188 S. E. 648; Di Giorgio vs. Di Giorgio, 153 Fla. 24, 13 So. 2d 596; State vs. Hedberg, 192 Minn. 193, 256 N. W. 91; People vs. Dewey, 23 Misc. Rep. 267, 50 N. Y. S. 1013; Gilman vs. Morgan, (Fla.), 29 So. 2d 372; Ex Parte Chandler, 36 Calif. App. 2d 583, 97 Pac. 2d 1048; Giachetti vs. Giachetti, (Fla.) 25 So. 2d 658; Oxley vs. Oxley, 159 Fed. 2d 10; Wear vs. Wear, 130 Kans. 205, 285 Pac. 606, 72 A. L. R. 425; Callahan vs. Callahan, 296 Ky. 444, 177 S. W. 2d 565. See Hughes vs. Hughes, (Ore.), 178 Pac. 2d 170. In Gilman vs. Morgan, supra, decided in February, 1947, the facts are as follows: The minor children involved were living with the grandparents in Iowa, the mother being dead. The father lived in the State of Florida. The children were allowed to visit their father and concluded to remain with him. The father was called to Iowa to attend a funeral and while there process involving custody of the children was served upon him. The father was directed to return the children to the State of Iowa. Thereafter the grandparents brought a petition for habeas corpus in Florida, demanding the custody of the children, and relying upon the order entered by the Iowa court. The Florida court, holding that the Iowa court was without jurisdiction, said in part as follows: "It becomes necessary for us to determine whether the Iowa judgment is entitled to full faith and credit under Article IV, Section 1, Constitution of the United States. If the Iowa court did not have jurisdiction of the subject matter its judgment is not entitled to full faith and credit. * * * In this class of cases jurisdiction connotes something more than process upon those who have custody of the minors. The minors are the res and without their presence within the jurisdiction of the court its judgment cannot be enforced and is a nullity." In Ex Parte Chandler, supra, it appears that the parents

of the children in question were living in Los Angeles. They separated. During that time, but before any divorce action was instituted, the father sent the children to Texas, establishing their domicile there, the father, however, continuing to live in Los Angeles. Subsequently the mother brought an action for divorce and demanded the custody of the children. The trial court directed the father to bring the children back from Texas, and on account of non-compliance with the order committed him to jail. He brought habeas corpus to be released. That was ordered by the appellate court. It was contended that when the trial court obtained jurisdiction over the parents, it also acquired jurisdiction to determine the custody of the child. The appellate court held, however, that since the children were in Texas, the California court had no jurisdiction, the court pointedly saying in part: "With the father under commitment of confinement in jail until he returns the children from Texas, what an anomalous situation would arise if the courts of Texas in whose jurisdiction the children concededly now are should determine, as they have a right to do, in the exercise of such jurisdiction, that the best interests and welfare of the children would be served by their remaining in Texas." It is quite readily seen in the face of this holding, how futile it would be for plaintiff to return to California and demand the custody of the minor child on the strength of the adjudication of the district court of Sheridan County.

The Restatement of Conflict of Laws, attempting to settle whatever conflict there might be on the point above mentioned, states the following rules. Sec. 117: "A state can exercise through its courts jurisdiction to determine the custody of children or to create the status of guardian of the person only if the domicil of the person placed under custody or guardianship is within the state." Sec. 146: "Upon the legal separation

of the parents, by divorce or otherwise, custody of their child can be given to either parent by a court of the state of domicil of the child." Sec. 147: "Except as stated in § 148, when the custody of a child has been awarded by the proper court to either parent, the decree will be enforced in other states." Comment (a): "An award of custody, like any other judgment or decree of a competent court, is entitled to recognition and enforcement in other states. Such a decree receives the same effect in another state that it receives in the state in which it was rendered. It is, therefore, conclusive of the status of the child at the time the decree was rendered and the merits of such an award cannot be re-examined either in the state where rendered or in another state." Sec. 148: "In any state into which the child comes, upon proof that the custodian of the child is unfit to have control of the child, the child may be taken from him and given while in the state to another person." As heretofore stated, the minor child involved in the case at bar has never been in the jurisdiction of this state, and Section 148, supra, accordingly has no application herein. Section 117 of the Restatement above mentioned is repeated in the comment under Section 33 of the Restatement of Judgments, and has been cited and approved in Wear vs. Wear, supra, and in Callahan vs. Callahan, supra. The rule appears to be sound, particularly in a clear case such as this when the child has never been in the state, and jurisdiction over the child has been reserved by the California court. It is quite apparent, therefore, that when the trial court attempted to adjudicate the custody of the minor child, and direct the defendant to turn her over to the custody of the plaintiff, it was wholly without jurisdiction to do so, and the judgment in that respect is null and void.

Counsel for plaintiff refer to the fact that the defendant, in his cross petition, asks for a divorce, seemingly thinking that since one or the other of the parties

would obtain a divorce in any event, the case should not be reopened, but, of course, in a retrial a divorce might be denied to either or both of the parties. Nor do we know of any decision of the courts holding that it makes no difference which of the parties is granted a divorce. Again the question of res judicata as to the grounds of divorce in this case is involved herein. We think it best not to enter into the details at this time. The date of separation of the parties is not quite clear to us, and we are not certain as to what bearing, if any, that should have in a case such as before us. It is true, of course, that the point of indignities offered to plaintiff since February 20, 1946, is in any event left in the case, but since the parties have not lived together since that date, as appears from the record, it would seem that it would have been advisable for the court to have opened the case for the consideration of the general subject, let alone that the defendant, as we have held, had a right to be heard on any point that had not been and could not have been adjudicated by the California court. We do not think that it is necessary to discuss at this time any other points suggested or argued in this case.

We are not unmindful of the learning and ability of the trial judge in this case and his unsurpassed record during his thirty years on the trial bench, but try as we may we are unable to arrive at the conclusion at which he arrived, and we are compelled, reluctant as we are to do so, to dissent from him. We think that it is clear that the order appealed from herein should be reversed, with direction to open up the default, to set aside the judgment entered in the case, to permit the defendant to file the answer and cross petition tendered by him and for other proceedings not inconsistent with this opinion. Since the judgment in the main case must be vacated all orders ancillary, collateral or incidental thereto, or dependent thereon, must fall with it, and must also be vacated. 5 C. J. S. 1478. Decennial Digest,

Appeal and Error, Sec. 1180(2). That includes the order relating to the commitment of the defendant to jail and the order relating to the allowances made to or for the plaintiff, or to or for her attorneys. An order to the foregoing effect will be entered.