## Commonwealth ex rel. v. Barbush

*Sol Hurwitz* and *I. E. Meyers,* for relators.

*Walter H. Compton* and *Maurice R. Metzger,* for respondent.

NEELY, J., March 27, 1950.—This is a habeas corpus proceeding, instituted on petition of Betty Marie Barbush to obtain custody from her husband, Francis Charles Barbush, of their minor child, Francis Charles Barbush, 2nd, born on April 9, 1947, and now in custody of his father. Relatrix is a resident of Chester, S. C., having left respondent by virtue of a consentable separation on November 1, 1949. At the time of the separation the parties were living in a third-floor apartment owned by respondent's father, at 123 South Third Street, Harrisburg, Pa. Relatrix took with her, with the consent of her husband, their younger child, Lewis George Barbush, born August 28, 1948, who at the time of the hearing was living with his mother at

the South Carolina address. She left Francis Charles Barbush, 2nd, here in custody of his father.

Relatrix is a native of South Carolina. She first met respondent in 1943 when he was in the Army stationed in the City of Greenville in that State. The parties were married on May 20, 1944, in the rectory of St. Patrick's Cathedral, Harrisburg, Pa. Both of the children were baptized in the Roman Catholic faith, which is the faith of the father and his parents, although not of the mother and her parents, who are Baptists.

Respondent filed his answer to the petition, and therein himself prayed for a writ of habeas corpus, commanding relatrix to deliver unto him the custody of Lewis George Barbush. The writ was issued as prayed for but never personally served upon relatrix. It was served upon her counsel by the sheriff a few days before the time fixed for hearing.

Within a matter of weeks after the consentable separation, relatrix, while retaining the custody of the child in South Carolina whom she obtained pursuant to the agreement of separation, returns to this jurisdiction and in derogation of the same agreement seeks custody of the other child whom she voluntarily left here at the time of the separation. And respondent not only asserts his right to the child whom the parties left here by their agreement of separation, but claims custody of the child whom he voluntarily sent to South Carolina in the custody of his mother. The parties here thus seek in this proceeding to disturb the divided custody of these children which they created by their own agreement.

Lewis George Barbush was not produced in court and does not appear to have been within the jurisdiction of the court at any time after November 1, 1949. This child was under the care of his maternal grandmother in Chester at the time of the hearing. In our

judgment, we would not have any right to make any order with respect to the custody of Lewis George Barbush under these circumstances. Although relatrix consented to taking testimony pertaining to the respective rights of these disputants, she did not, and in our judgment could not, waive the question of jurisdiction as to the custody of Lewis George Barbush.

In a habeas corpus proceeding for the custody of a child, the subject matter is the determination of such custody, and the jurisdiction of the court, under the Act of February 18, 1785, 2 Sm. L. 275, 12 PS §1871, 1873, is limited to the county within which the child is restrained or detained.

Relatrix returned to her former home in Chester, S. C., after the separation. The evidence indicates that the separation was not merely a temporary one, but was the result of deep-seated and prolonged differences. And the evidence also indicates that these differences have not been reconciled in any respect. In these circumstances, we think that not only has relatrix established a residence in South Carolina, but that she must be considered as domiciled there as well. The term "domicil" means the place where a person has his true, fixed, permanent home and principal establishment, and to which he has, whenever he is absent, the intention of returning, and from which he has no present intention of moving: 17 Am. Jur. 588, §2. Where a married woman is living separate and apart from her husband, by virtue of an agreement, she may acquire a separate domicil, and in such case a child living with her acquires her domicil: Boardman v. Boardman, 135 Conn. 124, 62 A. (2d) 521 (1948); A. L. I. Restatement of the Law of Conflict of Laws §§145 and 146; 53 A. L. R. 1160.

There is nothing to indicate in this case that relatrix's residence in South Carolina could be considered as a temporary sojourn. On the contrary, the evidence

shows this to be her "home" in the generally accepted sense in which that term is used. The evidence does not indicate any fixed intention on her part to return to Harrisburg. In her answers to counsel's interrogation on this phase of the case, she said she would only return if certain conditions were met. On the other hand, respondent testified in effect that he didn't want her to return and that there was no chance for a reconciliation. Hence, we are of the opinion, under the evidence in this case, that relatrix has established a separate domicil in South Carolina, and that South Carolina must be considered as being the domicil of Lewis George Barbush, the child whom she took with her at the time of the separation with the consent of her husband.

Inasmuch as Lewis George Barbush was not brought into court, and is not shown to have been in this county at the time of the issuance of the writ, or at any time subsequent thereto, but in fact was a resident of and domiciled in South Carolina and was there detained, in our judgment we do not have jurisdiction in the habeas corpus proceedings issued at the instance of respondent to obtain the custody of Lewis George Barbush: Commonwealth ex rel. Mees v. Mathieu II, 107 Pa. Superior Ct. 261 (1932) ; Commonwealth ex rel. Camp v. Camp, 150 Pa. Superior Ct. 649 (1942) ; Commonwealth ex rel. Teitelbaum v. Teitelbaum, 160 Pa. Superior Ct. 286 (1947).

This court in an opinion by our late Judge Fox in Commonwealth ex rel. Thomas v. Thomas, 46 Dauph. 388 (1939), quashed a writ of habeas corpus on the ground that the court did not have jurisdiction to issue such writ for the custody of a minor child where said child was not being detained within the limits of Dauphin County. The Thomas case is somewhat similar on its facts to this case in that the mother brought the writ. She had one child in her custody and sought

in Dauphin County to obtain custody of the other child who was detained by the father in Perry County. The court said that the writ should there have been issued out of Perry County where the child was being detained. The court overruled the contention that because this court had previously assumed jurisdiction in a nonsupport case and on an earlier writ of habeas corpus, that it therefore had jurisdiction to issue the second writ there in question. Respondent argues in this case that because we have taken jurisdiction on the writ of habeas corpus with respect to Francis Charles Barbush, 2nd, that therefore we necessarily have jurisdiction on a writ of habeas corpus for the custody of Lewis George Barbush. We think this argument is a non sequitur. Judge Fox's opinion and the other cases above cited are clearly authority for the proposition that there can be no jurisdiction in this court on a writ of habeas corpus for the custody of a child where the child is not within the limits of the county.

Respondent has referred our attention to the recent note in 9 A. L. R. (2d) 436 et seq., dealing generally with the power of the court of a State to make an award with respect to the custody of a child domiciled within that State but physically outside of the State. This is an interesting article on this very complex subject. It does not, however, in any way indicate that this court can dispense with the jurisdictional requirement under the Act of 1785 that a writ of habeas corpus for the custody of a child can issue only in the county where the child is detained.

It cannot be determined from this record that there is anything to choose, from the standpoint of morality, between the father and the mother. The mother, on the date of separation, in a highly emotional state, did endeavor to take her own life. It is disputed as to

whether or not she included her children in this tragic and fortunately unsuccessful endeavor, and we make no finding in this respect. This incident was part of a protracted and acrimonious dispute on that date between the husband and wife, and followed two weeks after the wife had a miscarriage at the Harrisburg Hospital. This incident is one of the circumstances that must be taken into consideration along with the other factors involved in this case. It does have some relation to the general fitness and qualifications of the mother.

Relatrix advances the contention that the third-floor apartment where the children were living on November 1, 1949, was not a satisfactory place in which to rear children. The evidence will not support a conclusion that she left on November 1, 1949, because of any unsatisfactory living conditions or surroundings from the standpoint of the children. In her testimony she objected to the proximity of and interference by respondent's parents in the domestic life of herself and her husband. She mentioned also the fact that the birth of both children had been by caesarian operation. She contends that all these considerations, plus the hospitalization above referred to, rendered her in a highly emotional state on the date of the separation.

It is true that on the first floor there is a restaurant and taproom. It is also true that the evidence shows that this establishment had been in that location for 28 years, and that it had been operated by respondent's father in a reputable manner. Respondent is employed there. It is also true that it was there at the time these parties were married. This was not a condition of which relatrix did not have full knowledge.

Relatrix herself lived with respondent's father and mother in their second-floor apartment at 123 South Third Street while respondent was in the Army, and

there is no evidence to indicate in any way that she was dissatisfied with her conditions or surroundings at that time. After respondent's return from the Army, the parties to this dispute took up housekeeping in a first-floor apartment, at 113 South Third Street, which was renovated and refurbished by respondent's father at considerable expense to himself. After living at the latter address for some time, Francis Charles Barbush, 2nd, then being six months old, the parties moved to the third-floor apartment at 123 South Third Street, which was also remodeled and refurnished for their accommodation.

Relatrix testified that she moved unwillingly to this third-floor apartment. Respondent, on the other hand, testified that they moved from 113 South Third Street because relatrix was scared of being in the first-floor apartment at that address and wanted to move. Respondent also testified that relatrix said that the first-floor apartment was too small. It is significant that it is undenied in this record that it was necessary for respondent's father to evict a tenant, who had lived in the third-floor apartment at 123 South Third Street for 18 years, in order to make this apartment available to these parties. We think it unlikely that respondent's father would have done this if relatrix had been an unwilling tenant. The inherent probability of truth, in our view, is that relatrix moved willingly from 113 South Third Street to 123 South Third Street.

Considering her residence at 123 South Third Street during her husband's military service, and the circumstances under which she moved into the apartment at 123 South Third Street after he returned from the Army, her testimony that she was not satisfied with the living conditions for her children loses some of its persuasive force. The weight of the evidence in this case would not support a finding that these children

had been permitted to have access to the grandfather's business establishment during working hours, admittance to the third-floor apartment being had by an entrance separated from that business establishment.

The interest of the grandparents, Mr. and Mrs. Lewis Barbush, in these children is manifest in this record. They have shown a disposition to protect these children, and particularly Francis Charles Barbush, 2nd, now in his father's custody, from improper influences. The record clearly reveals that from a financial standpoint, the grandfather, Mr. Lewis Barbush, proposes and is able to provide for his grandchildren in the way of education and some future financial security.

It is our duty in this type of case to consider the testimony and make such order on the merits of the case as to right and justice shall belong: Com. ex rel. Barnett v. Currie, 165 Pa. Superior Ct. 477 (1949). In determining as between the mother and father the right to the custody of a child, we must have regard to the general fitness of each parent and to the best interests and permanent welfare of the child: Commonwealth ex rel. Oliver v. Oliver, 165 Pa. Superior Ct. 593 (1949) ; Act of June 26, 1895, P. L. 316, sec. 2, 48 PS §92. It is true that children of tender age are generally given to the care and custody of the mother, unless compelling reasons appear to the contrary: Commonwealth ex rel. Gates v. Gates, 161 Pa. Superior Ct. 423 (1947). However, a mother's right to the custody of a child of tender years is not absolute and it must yield to the best interests and permanent welfare of the child. The guiding star of the court in a child custody case is the welfare of the child; to this all other considerations are subordinated. A father's right to custody of a child of tender years is not to be entirely ignored, since it is his obligation to maintain and educate his child. Such rule is especially applicable if the

child has lived in the father's home since birth, and the child receives the requisite supervision and adequate care therein, and the general home life of the child is not shown by the weight of the evidence to be unsatisfactory: Commonwealth ex rel. Swartzwelder v. Swartzwelder, 162 Pa. Superior Ct. 366 (1948); Latney's Appeal, 146 Pa. Superior Ct. 20 (1941); Commonwealth ex rel. Oliver v. Oliver, supra; Commonwealth ex rel. Kreiling v. Kreiling, 156 Pa. Superior Ct. 526 (1945).

The weight of the evidence indicates clearly that this child, Francis Charles Barbush, 2nd, is at the present time receiving the devotion of his father and paternal grandparents as well. The child is receiving requisite supervision and adequate care. He has gained in weight since the separation. We saw the child in court and observed him to be a bright, active and healthy looking child. The weight of the evidence does not indicate that the child is being subjected to unfavorable influences. The ability of the grandparents to provide for the future welfare of the child is a matter of some importance, since it indicates that the child has the expectation of an adequate education with some financial provision being otherwise made for him.

The living arrangements at the mother's home in South Carolina are shown to be somewhat crowded. She is now living with her family, and it is not entirely clear what provision she would make for the care of these two children when she gets the position which she expects to obtain in a local cotton mill. On this point see Commonwealth ex rel. Crilley et al. v. Laird, 160 Pa. Superior Ct. 132 (1947), where two minor children were given to a sister-in-law instead of the mother due, inter alia, to the fact that the mother was working and therefore was not able to give the children the necessary care and attention.

In probing for a result that will be for the best interests of Francis Charles Barbush, 2nd, the court should make an order that will shield the child as much as possible from a series of recurring emotional crises due to the shattered domestic life of the parents. We do not believe that a satisfactory order can be made that will not cause some emotional disturbances in this child. We also believe, taking into consideration all of the complicated factors existing in this case, that the disturbances will be far less if this child is left here with the father, with an appropriate order of visitation in the mother.

It is true that the religious training of a child is not the test in determining the right of custody (Commonwealth ex rel. Elizabeth Kelley v. Michael J. Kelley, 83 Pa. Superior Ct. 17 (1924)), but it may be one of the factors in determining what would be to the best interests of the child. If this child were entrusted to the mother, any visitation with the father would almost certainly result in serious emotional disturbance because of the sectarian differences of these parents.

The rule undoubtedly is that brothers should not be separated without good reason: Commonwealth ex rel. Reese v. Mellors et ux., 152 Pa. Superior Ct. 596 (1943). We take occasion to point out that the subject matter before us is only the question of the custody of Francis Charles Barbush, 2nd. The disposition of the custody of Lewis George Barbush is not before the court because of our lack of jurisdiction. Hence, we are here making no definitive order separating these two brothers. We do not overlook the effect of this order in that respect, but it would hardly be the correct legal approach to this problem to say that because we do not have jurisdiction of the one child, we should therefore not give adequate consideration to

all factors involving the custody of the child within our jurisdiction. It would be a negative approach to this problem to hold that because one child is out of our jurisdiction, that for that reason the other child must also be sent out of the jurisdiction. See Commonwealth ex rel. Fortunes v. Manos, 140 Pa. Superior Ct. 352, 354 (1940). Although we are not compelled to decide the question in this case, our view is that in the existing situation there may well be an adequate and good reason for the separation of these brothers.

There is, of course, a multitude of citations covering the wide variety of questions that arise in cases of this type. In our judgment, it would not serve any useful purpose to cite these authorities at length. We do take occasion, however, to acknowledge the very excellent article of Judge Sweney in the Temple University Law Quarterly, vol. 22, no. 3, January 1949, wherein can be found extensive citation of authority on the many interesting questions in cases involving custody of children.

The parties by their consentable separation have indeed created problems which make a satisfactory solution of this complex situation most difficult of attainment. However, weighing all factors it is our view that the best interests and welfare of Francis Charles Barbush, 2nd, will best be served by remaining in the custody of his father.

And now, March 27, 1950, the writ of habeas corpus issued on the petition of relatrix is hereby discharged, and Francis Charles Barbush, 2nd, is remanded into the custody of respondent. We direct that relatrix is entitled to visit Francis Charles Barbush, 2nd, in Harrisburg at reasonable and mutually convenient times and places. The writ of habeas corpus issued at the instance of respondent for the custody of Lewis George Barbush is discharged herewith.