## Margaret Brown's Estate.  Appeal of Park et al., Guardians.

*Guardian and ward—Parent and child—Custody of Children.*

At any time during minority the court will make such disposition of a minor child, whose custody is in dispute, as the circumstances of the case demand, having always in view, first and last, the consideration of what will best promote the welfare of the infant.

Testator appointed his wife guardian of his three children, and after her death two of his friends were to be the guardians.  An aunt of testator's wife lived in his family and cared for the children during the life of both the testator and his wife, and after the death of the wife continued in charge of them.  Testator was a Protestant, and there was evidence that he had requested the two friends who were to succeed his wife as guardians, to bring up his children in the Protestant faith.  Testator's wife was a Roman Catholic, and during her life the children were brought under Roman Catholic influences, and after her death remained so under the care of their aunt.  The wife by her will appointed the aunt guardian of the children.  The wife had no separate estate of her own.  The evidence showed that the minors, who were eight, fourteen and sixteen years of age respectively, were happy in their relations with their aunt, and the oldest declared that she would not live with her guardians, and that she would not go to a Protestant school.  *Held*, that, under the circumstances, the custody of the children should be awarded to the aunt.

Argued Jan. 11, 1895.  Appeal, No. 513, Jan. T., 1894, by testamentary guardians, from decree of O. C. Philadelphia Co., April T., 1890, No. 52, awarding custody of children.  Before Sterrett, C. J., Green, Williams, McCollum, Mitchell, Dean and Fell, JJ.  Affirmed.

Petition for an allowance for the maintenance and support of minor children.

The case was referred to J. E. Carpenter, Esq., as examiner and master, who reported as follows:

" Joseph Brown, the father of the minors, died Nov. 21, 1889, having first made his will, in which he left his estate to his wife, Mary Jane Brown, the mother of the minors, ' in trust that she will use, enjoy and dispose of the same or such part thereof as, in her judgment, may be necessary or proper for the maintenance of herself and my children, and upon her death then

whatever may remain of my said estate shall go to my children absolutely. I appoint my said wife to be guardian of the persons and estate of my minor children during her life, and my esteemed friends, William H. Park and William Loan, to be guardians of the persons and estates of my minor children after the decease of my wife.'

"Mary Jane Brown, the widow of Joseph Brown, the testator, survived her husband until Dec. 5, 1890, when she died, having first made her will, in which she directs: 'That all the estate of which I die possessed may remain in the custody and possession of Messrs. Corbin and Goodrich, who were the employers of my husband, and who have had charge of his money since his decease. I direct that the money remaining in their hands shall be paid out by them for the use of my three children as their necessities may require from time to time. It is also my desire that my said children shall remain in the care and keeping of their aunt, Sarah Jane Derr, as long as she may be able and willing to care for them, and that such necessary expenses as may be incurred in maintaining and caring for them shall be paid out of the funds in the hands of Messrs. Corbin and Goodrich. And I desire that they shall remain in their present residence, No. 2018 Abelina street, Philadelphia, but in case Mrs. Derr should desire to be relieved of their care, it is my desire and I direct that the said children shall be placed in the care of their aunt, Mrs. Margaret Price.'

"It does not appear that Mary Jane Brown, the widow of Joseph Brown and mother of the minors, had any separate estate of her own other than that which she received under the will of her late husband.

"Joseph and Mary Jane Brown left three children surviving them; Margaret, who became 16 years of age Oct. 14, 1893; Joseph James, who became 14 years of age Oct. 8, 1893, and Samuel, who became 8 years of age Sept. 13, 1893.

"Sarah Jane Derr, the petitioner, who is the aunt of Mary Jane Brown, the mother of the minors, came to live with Joseph Brown and his wife and children at Mr. Brown's request, and nursed and cared for both Mr. and Mrs. Brown, who were sick with consumption, until Mr. Brown died, and afterwards she continued to live with Mrs. Brown and the children until Mrs. Brown died, and since then she has continued in charge of the

minors until the present time, supporting and keeping the family together, partly with funds contributed by the custodian of the estate of the minors, partly from her own funds.

" Shortly after the death of Mrs. Brown an effort was made by Messrs. Loan and Park, the guardians under Mr. Brown's will, to obtain the custody of the persons of the minors. Mrs. Derr, the aunt to whose custody Mrs. Brown had in her lifetime, and afterwards by her will, committed the minors, declined to deliver them into the care of the guardians, whereupon a writ of habeas corpus was issued at the instance of the guardians under the father's will, the minors were brought into the court of quarter sessions, and were, by the order of that court, remanded to the custody of the aunt, Mrs. Derr.

" The minors are satisfied with the present arrangement and happy in their present family relations, and the eldest, Margaret, who is over sixteen years of age, declared unequivocally that she would not go to live with the guardians.

" The father, Joseph Brown, was a Protestant in religious belief. During his lifetime his children attended the Presbyterian church, and his wife, who was a Roman Catholic, occasionally accompanied her husband to the Presbyterian church. After the father's death the children were brought under Roman Catholic influences, and have remained so until the present time. Margaret, the eldest minor, in her testimony announced that she is a confirmed Catholic, and that she would never go to a Protestant school.

" The testimony of Messrs. Loan and Park was to the effect that Joseph Brown, the testator and father of the minors, had informed them before his death that he had named Messrs. Loan and Park in his will as the testamentary guardians of his children, and that he desired them to be brought up in ' his way,' meaning in the Protestant faith.

" The will of the testator, Joseph Brown, makes no allusion whatever to any religious instruction to be given to his children. Nor does the will of his widow, Mary Jane Brown, refer to the religious training of the minors.

" The petitioner, Sarah Jane Derr, prays for an allowance of $40 per month from the date of the death of the mother, Mary Jane Brown, for the maintenance and support of the minors. To this the testamentary guardians under the will of Joseph

Brown, by their answer, object : that they are able and willing to take care of, educate, and train the minors ; that ever since the death of the mother of the minors they have endeavored to obtain possession of their persons, but have been resisted by the petitioner, who refuses to allow the minors to be removed from her custody and care ; that the best interests of the minors are not attained by leaving them in the custody of the petitioner ; and that the amount asked for by the petitioner is excessive.

" It is well settled that the right of the father to appoint a testamentary guardian is paramount to that of the mother : Com. v. Hamilton, 1 Pitts. 412.   Indeed, the act of June 10, 1881, P. L. 96, which gives the mother authority to appoint a testamentary guardian, expressly reserves the right of the father by providing ' that the father be not living or being deceased he has not appointed such guardian.'

" Undoubtedly the testamentary guardians appointed by the will of the father, are entitled to the custody and care of the estates of the minors, but the English common law doctrine which gave to the father the possession of the person of his minor child, even in infancy and against the claim of the mother, has never been received in Pennsylvania, where the more liberal doctrine obtains that the state is the paramount guardian, and will look to the interest of the minor, and to the interest which society has in the proper care and training of children upon whom it is to depend for its future existence.

" In the case of Com. ex rel. v. Hart, 14 Phila. 352, ALLISON, P. J., collects the authorities on this subject, both in England and in Pennsylvania, and in an able and interesting opinion shows the progress of the breaking away from the old doctrine in England to the extent that it is now recognized there that the interests of the minors are to be regarded, not, however, as a controlling consideration, and showing the wide difference between the law of England in this respect, and that which has been from the beginning held and enforced in Pennsylvania, where a more liberal application of the principle of the controlling power of the state as parens patriæ has been adopted, looking more to the defence of those unable to help themselves and to the interest of society.   The law as now enforced in Pennsylvania on this subject is stated in this language : ' At any time during minority the court will make such disposition of a

minor child, whose custody is in dispute, as the circumstances of the case demand, having always in view, first and last, and controlled mainly by the consideration which will best promote the welfare of the infant.'

"Applying these rules of law to the present case and taking into consideration the surrounding circumstances, the master reports that in his opinion the best interests of the minors will be preserved by allowing them to remain in the custody of their aunt, the petitioner, with whom they are happy and form a united family. It is true that according to the testimony of the guardians under Joseph Brown's will the religious training of the children is different from what it might have been if the children had been left in charge of the guardians. But the will of Joseph Brown consigned them to the care of their mother, and it was while the minors were under her care that the present religious training was adopted.

"The petitioner was a member of the family during the lifetime of Joseph Brown, and remained in charge of the minors during his last illness, and the illness of his widow, and she has remained in charge of them, endeavoring to keep the family together ever since. The religious training of the minors was not changed by her, but any change made, was made by the mother of the children in her lifetime. It is too late, on this account, to tear up the family surroundings, and against their wills to drag these minors away from a home in which they have lived happily for several years, although in more poverty than their guardians, in view of the circumstances, should have permitted.

"Moreover, the court of quarter sessions, upon the hearing of a writ of habeas corpus, issued at the instance of the guardians, shortly after the mother's death, which occurred Dec. 5, 1890, remanded these minors to the care of the petitioner, so that she has had them in her custody by the actual order of that court.

"The master further reports and recommends that a proper allowance be made out of the funds of the estate of the minors, in the hands of the guardians, to the petitioner, to be devoted to the proper care, maintenance, and education of the minors, and inasmuch as the guardians have offered to take charge of them for the sum of thirty dollars per month, and as two of

the minors are able to contribute toward the support of the family, the master believes that the petitioner will be able to support the minors with economy upon thirty dollars per month, which he accordingly recommends as an allowance to be paid by the guardians out of the estates of the minors to the petitioner, until the further order of the court, for the purposes aforesaid.

" The master further reports and recommends that the sum of thirty dollars per month from Dec. 5, 1890, the date of the death of the mother of the minors, until the present time, be allowed the petitioner for money of her own already expended by her in this behalf, or borrowed by her for this purpose, or to pay rent accrued and not paid, less the sum of $465, already received by her from the estates of the minors."

A decree was entered accordingly by HANNA, P. J.

. *Error assigned* was in confirming report.

*Henry J. Scott*, for appellants, cited: Acts of April 8, 1833, P. L. 249; June 10, 1881, P. L. 96; Reed v. Mellor, 122 Pa. 635; Quinn's Est., 15 Phila. 594; Baldwin's Est., 2 Del. Co. R. 504; Robinson v. Zollinger, 9 Watts, 169; Com. v. Hamilton, 1 Pitts. R. 412; Com. v. Hearne, 10 Phila. 199; Com. v. Drynan, 15 W. N. 223; Soley's Est., 5 Leg. Gaz. 93.

*Charles Knittel*, for appellee, not heard, cited: Act of June 10, 1881, P. L. 96; Com. v. Hart, 14 Phila. 352.

PER CURIAM, Jan. 21, 1895:

. The facts and circumstances of which the decree in this case is predicated, are clearly and concisely presented in the report of the learned master, whose findings of fact appear to have been fully warranted by the testimony. We find no error in his conclusions, the most important of which is that " the best interests of the minors will be preserved by allowing them to remain with their aunt, the petitioner, with whom they are happy and form a united family." In the exercise of a sound discretion, we think the court was clearly right in dismissing the exceptions and entering the decree complained of.

For reasons given by the learned master the decree is affirmed and appeal dismissed with costs to be paid by appellants.