Commonwealth ex rel. Oliver, Appellant, *v.* Oliver.

594

Argued October 7, 1949. Before RHODES, P. J., HIRT, DITHRICH, ROSS, ARNOLD and FINE, JJ. (RENO, J., absent).

Habeas corpus for custody of minor children. Before LINTON, J.

Decree entered dismissing writ. Relatrix appealed.

*Joseph P. Devine,* for appellant.

*Leon Sacks,* for appellee.

OPINION BY FINE, J., November 22, 1949:

This habeas corpus proceeding was instituted by the mother who seeks custody of two sons, ages seven and one-half and five years, now living with their father. The court below dismissed the mother's petition and she has taken this appeal.

A case of this nature requires that we consider the testimony and make such order upon the merits of the case "as to right and justice shall belong": Act of July 11, 1917, P. L. 817, 12 PS §1874; *Commonwealth ex rel. Kreiling v. Kreiling,* 156 Pa. Superior Ct. 526, 531, 40 A. 2d 704. Regard must be had to the fitness of each parent as well as the best interests and permanent welfare of the children in determining the award of custody. Act of 1895, P. L. 316, 48 PS §92; Cf. *Commonwealth ex rel. Martocello v. Martocello,* 148 Pa. Superior Ct. 562, 25 A. 2d 855; *Commonwealth ex rel. Swartzwelder v. Swartzwelder,* 162 Pa. Superior Ct. 366, 368, 57 A. 2d 610.

The parties were married on May 13, 1939, and separated in August, 1945. After the separation the mother and the two children went to live with her sister in Trenton, New Jersey, for a short time. Thereafter, she and the children resided with her mother who was about sixty-eight years of age. The relatrix admitted on cross-examination that the children, while living with their grandmother, were not properly cared for; that the health of the children was impaired and that ". . . Tommy developed secondary anemia and his nerves were bad"; that the grandmother liked the younger child but "didn't care what happened to Tommy."

In October, 1946, the mother voluntarily surrendered their custody to the father with whom they have since remained. At that time she wrote a letter to her husband stating, *inter alia:* "I have offered you the custody of the children, which you have wanted for so long, if you will supply them with a proper home, which I am unable to do. . . . If I do not hear from you, I shall make [other] arrangements immediately . . . I am going to find boarding homes for them and get them settled as soon as possible. If you wish to find a home for them,

I would like to know immediately, because I have heard of a place for Dairy, and am on the lookout for one for Tommy."

The evidence clearly establishes that both parents are good and reputable citizens. There is no evidence that either parent is unfit morally or that the physical facilities of one home are appreciably superior to the other. In such cases, children of tender age are generally given to the care and custody of the mother, for ". . . the needs of a child of tender years are best served by the mother," unless compelling reasons appear to the contrary. *Commonwealth ex rel. Keller v. Keller,* 90 Pa. Superior Ct. 357; *Commonwealth ex rel. Hespelein v. Hespelein,* 157 Pa. Superior Ct. 224, 42 A. 2d 189; and *Commonwealth ex rel. Levinson v. Levinson,* 162 Pa. Superior Ct. 563, 59 A. 2d 625. A mother's right thereto however is not absolute; it must yield to the best interests and welfare of the children. *Latney's Appeal,* 146 Pa. Superior Ct. 20, 22, 21 A. 2d 521; *Commonwealth ex rel. Swartzwelder v. Swartzwelder,* supra.

Since the children have been away from the maternal grandmother and in the custody of their father, they have regained their health and are no longer irritable and mentally upset. They have become strong, happy and carefree and lead the wholesome lives of normal children. The mother now proposes to have the children live with her in a home which she jointly occupies with a man and his wife both in their middle sixties, who will care for the sons during the hours of her employment. To commit their care to strangers, as suggested, would expose the children to many of the very unsatisfactory circumstances existing during their residence with their maternal grandmother. The established facts show their present situation is one conducive to a normal development while the proposed change of abode will thrust the children into a new and strange environment and

require many untested adjustments. Nothing can be gained by such a change at this time and much might be lost by so doing.

In *Rumsey's Case,* 135 Pa. Superior Ct. 515, 7 A. 2d 43, the grandparents of a minor sought to obtain exclusive custody of the child. In sustaining an order directing that the child remain in the custody of his stepfather, this Court said, at page 519: "A consideration of the testimony . . . establishes the propriety of the order awarding the custody of the child to appellee. The balance of advantage is clearly with that disposition of the case. To remove the child from a home, with all of its advantages, in which he has lived for years, and from the wholesome environment to which he has made a complete adjustment, could not be done in the interests of the child." To remove children from one home to another is always attended by shock and should be avoided if possible. Their bonds of affection may become so strong that to sunder them suddenly may result not only in the children's unhappiness, but also in their physical injury. *Commonwealth ex rel. Children's Aid Society v. Gard,* 362 Pa. 85, 66 A. 2d 300. Further, children are generally better off in youthful associations and in a home, such as the respondent has provided, where there are other young children. In these circumstances it is our judgment that the best interests and welfare of the children require that at the present time the normal relationship with their father be continued, but subject to the right of the mother of visitation at proper and reasonable times.

Case remanded to the court below with instructions to modify the order to permit the mother the right of visitation; the order as thus modified is affirmed.