Commonwealth ex rel. Graham *v.* Graham,
Appellant.

554

Argued January 10, 1951. Before DREW, C. J., STERN, STEARNE, JONES, BELL, LADNER and CHIDSEY, JJ.

*W. Albert Ramey*, for appellants.

*Dan P. Arnold*, with him *D. Edward Chaplin* and *Chaplin & Arnold*, for appellee.

OPINION BY MR. JUSTICE CHIDSEY, May 23, 1951:

Anna May Graham, appellee, on November 2, 1949, instituted the instant habeas corpus proceedings in Clearfield County, Pennsylvania, against David Graham, father, and James A. Cowher, paternal great-grandfather, to secure custody of her son, Andrew Graham, age five years. She relied upon a decree of an Ohio court awarding custody of the child to her. The court below, on November 16, 1949, entered an order refusing the prayer of the petition, thereby permitting the child to remain with the father and paternal great-grandfather. The Superior Court reversed the

lower court. We allowed this appeal by the father and great-grandfather.

David and Anna Graham, after their marriage on June 30, 1944, moved from Pennsylvania to Cleveland, Ohio, where the child, Andrew, was born on December 26, 1944. The parents separated in 1945. Anna was thereafter employed as a practical nurse. Because of that employment and her defective vision, the child was cared for from time to time and largely reared by his great-grandfather, with whom he lived while in Pennsylvania. Divorce proceedings were instituted in Ohio by the mother. A hearing was had on April 5, 1949, and on April 8, 1949, a decree was entered divorcing the parents and providing with respect to the child: "It is further ordered that the Plaintiff be and is hereby awarded the temporary custody of the said minor child but due to the present physical condition of the plaintiff, it is further ordered that the said child continue to be domiciled with the paternal grandfather." (Inadvertently the order read "grandfather." rather than "great-grandfather".) The child had returned to Clearfield County, Pennsylvania, with James A. Cowher, the great-grandfather, on April 1, 1949, four days before the hearing and seven days prior to the decree.[1] The Ohio court further ordered that the arrangement as regards domicile should continue for a year and a half, after which time the issue of custody and domicile might be relitigated. This arrangement, as the order indicates, was made because of the physical

---

[1] It is mistakenly stated in the opinion of the Superior Court that "Following the entry of the aforesaid decree, the great-grandfather returned from the domicile of his grandson in Cleveland, Ohio, to his own domicile in Shawville, Clearfield County, Pennsylvania, taking the child with him." This statement is not in accord with the finding of the court below, which finding is amply supported by the evidence.

condition of the mother, namely, her defective vision, which, by her own admission, was and remains only ten per centum of normal.

The record with respect to the Pennsylvania proceedings is not clear. It appears, however, but not by the docket entries, that in July, 1949, the mother first instituted habeas corpus proceedings in Clearfield County, Pennsylvania, against David Graham and James A. Cowher to determine custody of the child,[2] that the court ordered a continuance, permitting the mother to take the child for two weeks upon posting a bond assuring return of the child to his great-grandfather at the end of that period, and conditioned that he should not be removed from Pennsylvania; and that notwithstanding this condition of the order, Anna Graham took the child to Cleveland, Ohio. She did return in due course and the court leniently cancelled the bond.

The docket entries reveal that a petition for habeas corpus was filed November 2, 1949, and a rule issued pursuant thereto. The court below and the attorneys before this Court have treated the hearing on November 4, 1949, as a second hearing on the original petition. All parties were present at this hearing in Novem-

---

[2] It is indicated in the opinion of the Superior Court that this earlier (July) proceeding in Clearfield County was instituted merely to enable the mother to enforce the right of visitation of the child, granted by the Ohio decree of April 8, 1949. This apparently is based on a statement made by her counsel at the second hearing in Clearfield County on November 4, 1949. However, it appears from the court's questioning of the mother at the second hearing, it was of the impression that the earlier proceeding had been instituted to obtain the custody of the child and have the sister, who had come to Clearfield County, admittedly for such purpose, take the child to Arizona. There was nothing in the record to indicate that the mother sought to visit the child at any time prior to the earlier proceeding in July.

ber. Anna Graham offered in evidence a copy of the original decree of divorce and a copy of a subsequent decree of an Ohio court dated October 26, 1949. The latter decree awarded exclusive custody of the child to the mother and ordered the child to be domiciled with the mother's sister and her blind husband in Arizona. The child, the husband, and the great-grandfather were not present at the hearing in Ohio which resulted in the modifying order, although David Graham received a letter from his wife's attorneys advising him of the pendency of the action. David Graham's attorney appeared in the Ohio court and asked for a continuance in order to prepare the case, which request was refused by the court.

Appellants introduced evidence in the instant proceeding with respect to the fitness of each parent and the great-grandfather and the environment presently surrounding the child. The hearing judge concluded that the best interests and welfare of the child would be served by his continuing to live with his father and great-grandfather, and entered an order denying the prayer of the mother's petition. The Superior Court was of opinion, President Judge RHODES dissenting, that (1) full faith and credit must be given to the Ohio decree of October 26, 1949, and (2) irrespective of full faith and credit, the best interests of the child required an award of custody to the mother.

Appellants contend that the full faith and credit clause of Article IV, Section 1 of the Constitution of the United States is inapplicable as regards the orders of the Ohio court for the reason that the child, when the respective hearings were held and decrees were entered, was not subject to the jurisdiction of the foreign court, and that the Superior Court gave undue weight to minor facts, with the result that its order is not conducive to nor does it promote the best interests and welfare of the child.

⁚ Consideration of the issues presented and review of the entire record compel the conclusion that the order of the Superior Court be reversed.

Neither the authentication of the original Ohio decree of April 8, 1949, nor of the modifying decree of October 26, 1949, conformed with the laws of Congress with respect to judgments and decrees of another state in that both lacked the required certificate of the hearing judge that the attestation of the clerk of the court was in due form (Act of June 25, 1948, c. 646, 62 Stat. 947, 28 U. S. C. A. 1738). It is not clear, however, that objection by appellants' counsel to admission into evidence of these decrees was based on their irregularity in this respect, and to effect a complete disposition of this case we will consider them as properly in evidence.

If it be assumed that the Ohio court had jurisdiction of the subject matter (status of the child) to enter the order of April 8, 1949, and that full faith and credit must be extended thereto, it must be recognized that the order definitely establishes the domicile and residence of the child in Pennsylvania. The Ohio court not only permitted, but directed that the domicile as well as residence of the child, the controlling factors as to jurisdiction, be in Pennsylvania. While the child is domiciled and resident in Pennsylvania, the Ohio court is without jurisdiction of the person and subject matter. The attempted reservation of jurisdiction by the court and the provision for reconsideration at the end of eighteen months could not, therefore, be enforced by the Ohio court. It surrendered any jurisdiction it may have had, and its later decree of October 26, 1949 was nugatory. To conclude otherwise would permit reservation of jurisdiction and control of the actual custody of the child for any stated time, indeed throughout its minority, regardless of its whereabouts as to residence and domicile. Certainly, such stated retention of jurisdiction cannot have extraterritorial ef-

fect to preclude courts of a sister state, being possessed of domicile and residence, from exercising jurisdiction.

Jurisdiction of a court in a proceeding involving custody is determined by the domicile or residence of the child. *Commonwealth ex rel. v. Daven,* 298 Pa. 416, 148 A. 524; *Commonwealth ex rel. Sage v. Sage,* 160 Pa. 399, 28 A. 863; *Commonwealth ex rel. Camp v. Camp,* 150 Pa. Superior Ct. 649 (1942), 29 A. 2d 363; *In re: Custody of Minor Children of Dunbar A. Rosenthal,* 103 Pa. Superior Ct. 27, 157 A. 342; *Commonwealth ex rel. v. Eich,* 73 Pa. Superior Ct. 268; *State ex rel. Larson v. Larson,* 190 Minn. 489, 252 N. W. 329 (1934); Restatement, Conflict of Laws, Sections 117, 145, 146. A court which does not have jurisdiction of the child, does not have jurisdiction of the subject matter to determine the right of custody as between the parties. *Commonwealth ex rel. v. Daven,* supra; *Commonwealth ex rel. Camp v. Camp,* supra; *Gilman v. Morgan,* 158 Fla. 605, 29 So. 2d 372, cert. denied, 331 U. S. 796; *Dorman v. Friendly,* 146 Fla. 732; *Lake v. Lake,* 63 Wyo. 375, 182 P. 2d 824.

Infants are wards of the court having jurisdiction of their person. They are under its protection, care, and control. In awarding the custody of a child, the court must be guided in its decision by the welfare and best interests of the child. The Commonwealth is vitally concerned with infants within its boundaries and an interested party in all matters affecting them. *Commonwealth ex rel. Children's Aid Society v. Gard,* 162 Pa. Superior Ct. 415 (1948), affirmed 362 Pa. 85, 66 A. 2d 300; *Burns v. Shapley,* 16 Ala. App. 297, 77 Co. 447; *Helton v. Crawley,* 41 N. W. 2d 60 (1950) (Iowa); *People ex rel. Wagner v. Torrance,* 95 Colo. 47, 27 P. 2d 1038; *McMillin v. McMillin,* 114 Colo. 247, 158 P. 2d 444; 31 C. J., Infants, 988, Section 6; 43 C. J. S., Infants, Section 5, p. 52. The interest of the state is reflected

in the criterion adopted by our courts, that the controlling consideration is the welfare of the child, including physical, intellectual, moral, and spiritual well-being. *Commonwealth ex rel. v. Daven,* supra; *Commonwealth ex rel. Children's Aid Society v. Gard,* supra.

Residence within this Commonwealth is sufficient for exercise of jurisdiction by our courts: *Commonwealth ex rel. v. Daven,* supra; *Commonwealth ex rel. Sage v. Sage,* supra; *Commonwealth ex rel. Camp v. Camp,* supra; *Commonwealth ex rel. v. Eich,* supra; *In re: Custody of Minor Children of Dunbar A. Rosenthal,* supra. When the father returned to Pennsylvania on June 11, 1949, more than four months before the Ohio decree of October 26, 1949, and made his home with the great-grandfather and child in this State, whatever may have been the status of the child, it is clear that residence ripened into domicile.

Examination of the instant record with respect to the jurisdiction of the Ohio courts reveals fundamental factors which do not require courts of Pennsylvania to recognize the orders in question as presently binding upon them. The child left the State of Ohio on April 1, 1949, to resume residence in Pennsylvania with his great-grandfather. The divorce proceedings which resulted in the decree purporting to establish the child's domicile in Pennsylvania were heard on April 5, 1949. The minor child was not then within or a resident of the State of Ohio, and any decree of the court could be effective only as regards the parents themselves. *Commonwealth ex rel. Camp v. Camp,* supra; *Commonwealth ex rel. Josephine Lembeck v. Lembeck,* 83 Pa. Superior Ct. 305; *Gilman v. Morgan,* supra; *Reynolds v. Stockton,* 140 U. S. 254 (1891) ; *Boor v. Boor,* 43 N. W. 2d 155 (Iowa) ; *Dorman v. Friendly,* supra; *In re Erving,* 109 N. J. Eq. 294, 157 A. 161; *Lake v. Lake,* supra; 50 C. J. S., Judgments, 889, p. 482; Restatement, Conflict of Laws, Section 429 (c).

The April 8, 1949 decree of the Ohio court awarding custody to the mother is inconsistent in terms. It creates an incongruous gulf between custody on the one hand and domicile and residence on the other. Attempt is made to award custody of the child to the mother in Ohio but there is also a specific direction that the child be domiciled in Pennsylvania. The Ohio court, by ordering that the child *"continue* to be domiciled with the paternal [great-grandfather]" in Pennsylvania, pronounced a fact which it recognized as already existing, namely, that the child was already a domiciliary and resident of Pennsylvania. The decree of a court of a state cannot operate extraterritorially, nor can a state exercise jurisdiction by judicial process or otherwise over persons or property outside its territorial limits. *Pennoyer v. Neff,* 95 U. S. 714; *In re: Custody of Minor Children of Dunbar A. Rosenthal,* supra; *Commonwealth ex rel. Josephine Lembeck v. Lembeck,* supra.

Jurisdictional infirmity is not saved by the full faith and credit clause. See *Thompson v. Whitman,* 18 Wall. 457, 21 L. Ed. 897; *Griffin v. Griffin,* 327 U. S. 220, 66 S. Ct. 556. At best the earlier Ohio order of April 9th purporting to give custody to the mother in one jurisdiction and to establish the child's domicile and residence in another is of doubtful efficacy and need not be recognized as conclusive by the courts of Pennsylvania. See the opinion of the court and the concurring opinions in *New York ex rel. Halvey v. Halvey,* 330 U. S. 610, 67 S. Ct. 903. The full faith and credit clause will not apply where the jurisdiction of the sister state is doubtful. In *New York ex rel. Halvey v. Halvey,* supra, Mr. Justice FRANKFURTER in his concurring opinion, at p. 618 said: "In determining whether the New York judgment should stand or fall account must be taken of two competing considerations. There is first the presumptive jurisdiction of the

court of. a sister State—here Florida—to .render the judgment for which full faith and credit is asked. The other is the power of a State court—here New York—which has actual control of the child to make provision for the child's .welfare. Where, as here, both considerations cannot prevail one must yield. Since the jurisdiction of the Florida court in making the custodial decree is doubtful, New York was justified in exercising its power in the interest of the child. Williams .v. North Carolina, 325 U. S. 226, [65 .S. Ct. 1092, 89 L. Ed. 1577, 157 A. L. R. 1366.]"

We are of the opinion that the court below had power to dispose of the case without giving binding effect to the Ohio decrees. Thus concluding, the court below properly entered upon a full .hearing to determine; from the evidence, a disposition which was for the best interests and welfare of the child, and it becomes our duty under the law (Act of July 11, 1917, P. L. 817, Section 1, 12 PS §1874) to "consider the testimony and make such order upon the merits of the case, either in affirmance, reversal, or modification of the order appealed from, as to right and justice shall .belong." See *Commonwealth ex rel. Piper v. Edberg,* 346 Pa. 512, 517, 31 A. 2d 84.

It appears that the Superior Court gave undue weight and importance to some aspects of. rural life. We believe it was unduly impressed by the lack of modern bathroom facilities in the home of the great-grandfather, and by the thought that the care of the child was left principally to the 78 year old great-grandfather. Child welfare representatives, neighbors of James A. Cowher, the great-grandfather, and the minister of the church in Shawville, Pennsylvania, all testified concerning the neat condition of the great-grandfather's home, the favorable environment, and his good reputation and standing in the community. While the fitness of the great-grandfather was stressed, it is

clear that the child's relationship with its father is normal. The father takes part in the care of the child, lives in the same home, and is employed and able to maintain the home. The father's mother who lives nearby does the child's laundry, often helps to prepare his meals, and sees him frequently. The child has a relatively comfortable and clean home. There is ample yard space to play, and abundant playthings are provided. He receives spiritual guidance from his great-grandfather and attends Sunday school regularly. All of this was established to the satisfaction of the Clearfield County court which, upon consideration of all the facts, ordered the child to remain with its father and great-grandfather.

The order of the Ohio court attempted to award exclusive custody of the child to the mother and to constitute the child's domicile in Arizona with the mother's sister and her blind husband. The instant record does not contain any evidence which tends to establish the fitness of either the Arizona home or of the aunt and uncle. The fitness of the mother herself may be questioned in the light of her physical handicap, her use of improper language, and harsh attitude toward the child. There is no compelling reason to assume that the mother would leave her daughter (not the child of appellant David Graham) and other attachments in Ohio and live with her son in Arizona. The only indication is her statement of intention. Her unreliability has been demonstrated by the violation of the Clearfield County court's order which granted her the child for two weeks, on condition the child be kept within Pennsylvania. Despite the order and the obligation of the performance bond, appellee took the child to Cleveland, Ohio. Cf. *Commonwealth ex rel. v. Daven,* supra.

We are not unmindful of the presumption that a mother is ordinarily better qualified to rear a child of tender years, but we are satisfied, under the circum-

stances presented by this case, that the best interests and welfare of the child will be served by his remaining in Pennsylvania with his father and great-grandfather in familiar surroundings and with familiar persons for whom it is apparent he has developed an attachment, rather than to permit him to be transported to Arizona to live with strangers in an unfamiliar environment.

The order of the Superior Court is reversed.

———

DISSENTING OPINION BY MR. JUSTICE BELL:

The decision of this Court awarding custody of a child four and one-half years old to a *great-grandfather*, aged 78, *instead of to his mother, is, according to all human experience, directly contrary* to the best interests and welfare of a young child. A fortiori is this so when the great-grandfather subsists on old age assistance and the child and he share a bedroom in a three-room house where there is *no water, no lights, and no bathroom;* and no woman to help care for him.

It is well and wisely settled both in Pennsylvania and in Ohio that the pole star is the best interests and welfare of the child: *Com. ex rel. Sage v. Sage,* 160 Pa. 399, 28 A. 863; *Margaret Brown's Estate,* 166 Pa. 249, 30 A. 1122; *Com. ex rel. v. Daven,* 298 Pa. 416, 148 A. 524; *Com. ex rel. Piper v. Edberg,* 346 Pa. 512, 31 A. 2d 84; *Com. ex rel. Children's Aid Society v. Gard,* 362 Pa. 85, 66 A. 2d 300; *Com. ex rel. Self v. Self,* 153 Pa. Superior Ct. 443, 34 A. 2d 263; *Com. ex rel. George v. George,* 167 Pa. Superior Ct. 563, 76 A. 2d 459; *Tanner v. Tanner,* 78 Ohio App. 178, 62 N. E. 2d 654; *In re. Griffin,* 15 Ohio Supp. 101. But in considering the best interests and welfare of a very young child we must remember that there is no love like a mother's love and nothing can take its place—certainly not a great-grandfather. Human experience shows that a

great-grandfather has neither the strength nor the patience nor the qualities to give a child of tender years the care and the attention and devotion which a mother showers on her child.

The partially blind* mother of this child is a practical nurse, who, because of her husband's failure to support her or their child, has had to work to earn her livelihood. She brought an action for a divorce and for custody of their child in Ohio, *where all the parties lived and were domiciled. It is indisputable that the court had jurisdiction of both parents and of their child** as well as the right to decide the child's custody.*

The court on April 8, 1949, awarded the temporary *custody* of the child to the mother. Due to her ill health at that time, the court ordered that the child live (it ambiguously used the word "domiciled") with his paternal great-grandfather for 18 months, at which time it directed that the question of custody could be re-litigated. The great-grandfather's present contention that the court's said decree, under which he received

---

* The mother's vision, was sufficient to enable her to leave Cleveland, Ohio, and travel to Clearfield, Pennsylvania, for the hearing, a distance of some 250 miles, by bus, unaccompanied.

** The opinion of the learned President Judge of the Court of Common Pleas of Clearfield County states: "Admittedly, the parents were residents of the State of Ohio at the time the action in divorce was instituted. Admittedly, the child spent part of his time in Pennsylvania, but was in the State of Ohio with his great-grandfather for several months prior to the hearing and decree in divorce between his parents." The evidence shows that the child went to live with his great-grandfather in Pennsylvania on April 1, 1949, *four* days before the hearing and that the court's decree was formally entered on April 8, 1949. This could not change, as will hereinafter be demonstrated, the child's domicile which, under the law, was that of his father's, nor oust the jurisdiction of the Ohio court.

the boy, was invalid, certainly comes with poor grace and, as we shall see, is absolutely devoid of merit.

Pursuant to the court's decree, the question of custody was re-litigated therein six months later, viz: on October 26, 1949. It is obvious that the court's jurisdiction which it specifically retained (as is frequently done in custody cases in Pennsylvania), could not be lost or ousted unless and until another court lawfully acquired jurisdiction. The mother, and so far as the record shows, the father, still retained their respective *domicile* in Ohio. Furthermore, the father and the great-grandfather were notified of the hearing by registered mail; the *father appeared in said proceedings by counsel;* and the court, after careful consideration and investigation of all pertinent facts and conditions, on October 26, 1949 awarded to the mother the *exclusive custody* of the child. Under all these facts, the court's order or decree was valid and binding and was entitled to recognition everywhere in the United States under "the full faith and credit" clause.

. Nevertheless the great-grandfather refused to obey the court's order or to deliver the child, so the mother was forced to bring habeas corpus proceedings against the father and the great-grandfather *one week later* in Clearfield County, Pa., where they were residing.

The validity of the Ohio decree and its binding effect in Pennsylvania *must be sustained* under the full faith and credit clause of the Constitution, since said court had jurisdiction at both hearings of the mother and the father and the child: *Yarborough v. Yarborough,* 290 U. S. 202, 54 S. Ct. 181; *New York ex rel. Halvey v. Halvey,* 330 U. S. 610, 67 S. Ct. 903. See also to the same effect: *Com. ex rel. DiPasquale v. DiPasquale,* 162 Pa. Superior Ct. 29, 56 A. 2d 265 (allocatur refused); *Com. ex rel. Teitelbaum v. Teitelbaum,* 160 Pa. Superior Ct. 286, 50 A. 2d 713; Restatement, Conflict of Laws, §§32 and 147.

The applicability of the full faith and credit provision of the Constitution was raised and in principle at least decided adversely to the contention of this defendant in the Supreme Court of the United States in *Yarborough v. Yarborough*, 290 U. S. 202, supra. In that case a decree of a state court fixing the permanent obligation of a divorced father for the support and education of his minor daughter was held binding under the full faith and credit clause of the Constitution *on the courts of another state to which the daughter and the divorced mother had removed* and in which it was sought to force additional contributions from the father by attachment of his local property. In that case Mr. Justice BRANDEIS, delivering the opinion of the Court, said (inter alia), page 210-212: "It is contended that the Georgia decree is not binding upon Sadie [the child], because she was not a formal party to the suit, *was not served with process* and no guardian *ad litem* was appointed for her therein. . . . As that suit embraces within its scope the *disposition and care of minor children, jurisdiction over the parents confers eo ipso jurisdiction over the minor's custody and support.*[*] . . .

". . . It is contended that the order for permanent alimony is not binding upon Sadie *because she was not a resident of Georgia at the time it was entered. Being a minor, Sadie's domicile was Georgia, that of her father; and her domicile continued to be in Georgia until entry of the judgment in question. She was not capable by her own act of changing her domicile. Neither the temporary residence in North Carolina at the time the divorce suit was begun, nor her removal with her mother to South Carolina before entry of the judgment, effected a change of Sadie's domicile. . . . the status* of the minor, are determined ordinarily not by

---

[*] Italics throughout, ours.

the place of the minor's residence but by the law of the father's domicile. Moreover, this is not a case where the scope of the jurisdiction acquired by the Georgia court rests upon the effectiveness of service by publication upon a nonresident. Mrs. Yarborough filed a cross-bill, as well as an answer; . . . . Thus the court acquired complete jurisdiction of the marriage status and, as an incident, power to finally determine the extent of her father's obligation to support his minor child." This case directly, as well as in principle, rules the present case, and its opinion is equally applicable to the present case: *"She [the minor] was not capable by her own act of changing her domicile. Neither the temporary residence in [Pennsylvania] at the time the divorce suit was [completed], nor her removal with her [great-grandfather] to [Pennsylvania] before entry of the judgment, effected a change of [the minor's] domicile."*

*Com. ex rel. Teitelbaum v. Teitelbaum,* 160 Pa. Superior Ct. 286, 50 A. 2d 713, is almost on all fours with and likewise rules the present case. In that case the mother and father were residents of Philadelphia. After a habeas corpus by the father for the custody of their three year old daughter the Municipal Court of Philadelphia County, in accordance with an agreement of the parents, *awarded the custody to the father. Shortly thereafter the child was sent to a* brother and sister-in-law of the father in Gallup, *New Mexico.* On February 25, 1946, the mother petitioned the Municipal Court of Philadelphia County for an order on the father *to compel him to have the child returned to Philadelphia County.* She admitted the parents had agreed that the father's brother and sister-in-law could adopt the minor child there involved. It subsequently appeared that they had adopted the minor child, although some doubt still existed on that point. The Municipal Court held that the child no longer retained the father's domicile and was not within its jurisdic-

tion. The Superior Court reversed and held it had jurisdiction and that if adoption had not taken place the Municipal Court must consider the case on its merits and make a decision as to what was for the best interest of the child. It will be noted, of course, that the child had been sent to New Mexico under its order and was still there, although the court had awarded the custody to the father. This is exactly the present case. The Court in its opinion said (p. 288, 289):

"The jurisdiction of the court attached on September 18, 1945, when the original writ was issued. At that time both of the parties and their minor daughter resided in Philadelphia county. By the order in that proceeding, awarding the *custody* of the child to the father, *the domicile of the child, so far as this record is concerned, continued to be that of the father and the court had jurisdiction of the present proceeding.* The petition for habeas corpus filed by respondent in effect was a petition for modification of the order made on the original writ, awarding custody of the child to relator. Orders determining the custody of children are temporary in their nature and are always subject to modification to meet changed conditions. Com. ex rel. v. Daven, 298 Pa. 416, 148 A. 524."

"The rule is that *'The minor child's domicile, in the case of divorce or judicial separation of its parents, is that of the parent to whose custody it has been legally given'*: Restatement, Conflict of Laws, §32. And it is settled that jurisdiction of a court in a proceeding involving custody is determined by the domicile or the residence of the child. Com. ex rel. Camp v. Camp, 150 Pa. Superior Ct. 649, 29 A. 2d 363. . . . So far as the present record discloses, the domicile of the child, in law, was that of relator in the county of Philadelphia, when the present petitions were filed. The court erred therefore, in refusing to go into a hearing in this proceeding, first to determine whether changed

facts since the original order, not appearing in this record, have worked a legal change in the domicile or residence of the child ousting the jurisdiction of the court, and, if not whether the best interests of the child require a change in the order made on September 18, 1945."

The great lengths to which the Supreme Court of the United States has gone to sustain the applicability and effect of the full faith and credit clause to foreign decrees in custody cases is further apparent from *New York ex rel. Halvey v. Halvey,* 330 U. S. 610, supra. In that case the Halveys were married in 1937 and lived together in New York until 1944. In 1944 Mrs. Halvey went to Florida with her six year old son and established her residence there. In 1945 she instituted a suit for divorce in Florida. *Service of process on Mr. Halvey was had by publication. Neither he nor any attorney representing him appeared in the action.* The day before the Florida decree was granted, Mr. Halvey, without the knowledge or approval of his wife, took their child back to New York. *The next day* the Florida court entered a decree granting Mrs. Halvey a divorce and awarding her the permanent care, custody and control of their child.

Mrs. Halvey then brought habeas corpus proceeding in New York. The New York court after hearing ordered that the custody of the child remain with the mother, but gave the father certain rights of visitation. The Supreme Court of the United States pointed out that under Florida law the welfare of the child was the chief consideration and it could modify its custody decrees when "altered conditions [were] shown to have arisen since the decree, or because of material facts bearing on the question of custody and existing at the time of the decree, but which were unknown to the Court and then only for the welfare of the child." The court further held that the New York court did

only what the Florida court could have done and therefore there was no violation of the full faith and credit clause of the Constitution.

Under these authorities it is clear that the Ohio court had jurisdiction of the subject matter and of the parties at the time it entered each of its aforesaid decrees of April 8, 1949 and October 26, 1949 and that these decrees were entitled to full faith and credit in every state in the United States and could be changed only when changed conditions were shown which affected the welfare of the child and called for a change or modification of the Ohio decree.

The majority opinion blindly or blandly ignores the principles laid down in the aforesaid decisions of the Supreme Court of the United States with respect to the full faith and credit clause and denies that the court in Ohio had jurisdiction because it is well settled in Pennsylvania that "jurisdiction of a court in a proceeding involving custody is determined by the *domicile or* residence of the child". This would not deny or oust the jurisdiction of the Ohio court, first, because it had retained jurisdiction of the parties; and secondly, because the domicile of the child was originally that of the father and after the April decree was that of the mother, to whose *custody* the court had awarded him; and thirdly, the father appeared personally or by counsel in each custody proceeding. So far as the original Ohio divorce proceedings are concerned, the father and the mother and the child were actually residents of and domiciled in Ohio. Under these facts all authorities are agreed that the order or decree of April 8, 1949 was valid and binding in every state in the Union. After the said Court awarded the *custody* of the child to the mother, it is clearly settled that "the minor child's domicile, in the case of divorce . . . is that of the parent to whose *custody* it has been legally given": *Com. ex rel. Teitelbaum v. Teitelbaum,*

160 Pa. Superior Ct. 286, 50 A. 2d 713; Restatement, Conflict of Laws, §32, *Yarborough v. Yarborough,* 290 U. S. 202. It follows, therefore, that the Ohio court having jurisdiction of both parents and of the minor because his custody and therefore his domicile was with his mother, it had undoubted jurisdiction to make the order or decree of October 26, 1949 which the court of Clearfield County ignored.

The case of *Com. ex rel. Camp v. Camp,* 150 Pa. Superior Ct. 649, cited by the majority, instead of supporting the majority opinion, impliedly at least, supports this opinion. In February 1942 a father who was a resident of Maine, obtained a writ of habeas corpus for the custody of his ten year old child. The child was living with the mother and they both had resided in Philadelphia since 1938. In the latter part of January 1942, several weeks before the petition for habeas corpus was filed, the mother sent the child to New York State to live with relatives. The court held that the Municipal Court of Philadelphia County had jurisdiction of the subject matter and of the parties "and *sending him [the child] to live temporarily in New York* under respondent's control *did not effect a change of domicile* whether his removal was for the purpose of defeating the court's jurisdiction or for some other purpose."

The error of the majority lies in their failure to realize that the child's temporarily living in Pennsylvania does not effect and cannot effect a change of domicile, or oust the jurisdiction of the Ohio court. The domicile remains with the mother, to whom the court, having indisputable jurisdiction, awarded the custody of the child. All authorities are in accord that a habeas corpus proceeding may be brought in any court either (1) where the child was domiciled; or (2) where the child may be found. These two jurisdictions are separate and co-existent and neither is ex-

clusive. When the mother of this child filed the present habeas corpus proceedings against the father and great-grandfather in Clearfield County, it is clear that the court of Clearfield County had jurisdiction since the child was present in said County, but it is a non sequitur, as well as contrary to *all* the authorities to say that the Ohio court which, under its decree of April and of October 1949, had jurisdiction of both parents* had no jurisdiction or authority to enter its decree because the child was temporarily living in Clearfield County; and it is equally fallacious to hold that the Ohio decree had no extra-territorial effect and could be ignored by Pennsylvania. As so clearly and correctly stated in Restatement, Conflict of Laws, §147: ". . . when the *custody* of a child has been awarded by the proper court to either parent, *the decree will be enforced in other states*".

But even when the order or decree of the Ohio court is valid and binding in Pennsylvania—as it is here under the full faith and credit clause—its effect is neither irrevocable nor unchangeable. It is important to recall that "Orders fixing the custody of children are temporary in their nature and *always subject to modification to meet changed conditions." Com. ex rel. v. Daven,* 298 Pa. 416, 419, 148 A. 524. See also to the same effect: *Com. ex rel. DiPasquale v. DiPasquale,* 162 Pa. Superior Ct. 29, 56 A. 2d 265; *Com. ex rel. Teitelbaum v. Teitelbaum,* 160 Pa. Superior Ct. 286, 50 A. 2d 713; 50 C. J. S. 487, Judgments, §889 (h) (5). Restatement, Conflict of Laws, §147.

As is so well stated in Comment (a) to §147 of the Restatement: "It [the decree of custody made by a competent court in another state] is conclusive of the status of the child at the time the decree was

---

* Each of whom was still domiciled in Ohio and each of whom appeared at the hearing or trial.

rendered and the merits of such an award cannot be re-examined either in the state where rendered or in another state. . . . Therefore, while courts in other states will enforce the custody decree in so far as it determines the status of the child at the time it was issued, they may, if they have jurisdiction, change such award upon facts which have arisen subsequent to the first decree."

In *Com. ex rel. v. Daven*, 298 Pa., supra, a court in North Carolina awarded two young children to a boarding home " 'there to remain until the further orders from this court.' . . . 'the Court then stated to Mrs. Bryant [mother] its reluctance to make any decision separating a mother from her children and hoped that the status of Mrs. Bryant would be so changed in the future as to enable a different disposition of this case'." Six months later Mrs. Bryant surreptitiously took her children to Philadelphia where they continued to live. Six months after that, the representative of the North Carolina court obtained in Philadelphia County a writ of habeas corpus. The Supreme Court of Pennsylvania decided that the case should be heard on its merits and that the decision should be based upon the welfare of the children at the present time and not their welfare a year previous. The Court said (pp. 420, 421) inter alia, in its opinion: "The error of the municipal court was in refusing to hear testimony *especially as to changed and present conditions* and in treating the adjudication in North Carolina as permanently fixing the status of the children so that it could be changed by no other court. . . . Judgments and decrees concerning children are never res judicata *as to facts and conditions subsequently arising.* . . . *Orders concerning the custody of children are uniformly treated* as temporary and subject to change to meet changing conditions. . . . So far as children are concerned, the situation is, or

may be, constantly varying. The parent fit to have the custody of his children today may, by reason of changed circumstances, become unfit tomorrow. The above rule does not prevent the courts of the state, within whose limits the children may be, from considering whether a change in the situation may not call for a new disposition".

Mr. Justice FRANKFURTER, in his concurring opinion in *New York ex rel. Halvey v. Halvey*, 330 U. S. 610, 617, well expressed this almost universally recognized rule when he said: "If there were no question as to the power of Florida to provide for the custody of this child in the manner in which the Florida decree of divorce did, I think *New York would have to respect what Florida decreed, unless changed conditions affecting the welfare of the child called for a change in custodial care. . . . a valid custodial decree by Florida could not be set aside simply because a New York court, on independent consideration, has its own view of what custody would be appropriate.*" That is and should be the law! Any dicta to the contrary by any court of Pennsylvania must yield to the decisions of the Supreme Court of the United States pertaining to the full faith and credit which must be given to the decree of a court of a sister state. The Ohio decree is clearly valid and binding on *all* courts; but equally clearly it can be modified or changed by Pennsylvania courts, which subsequently acquire jurisdiction, *if, but only if, "changed conditions affecting the welfare of the child* call for a change in custodial care."

The reason for and the reasonableness of a rule requiring a change of conditions in order to change an order of court prescribing a child's custody must be obvious. If a different court can make a different order of custody within a week *without any change of facts or conditions,* still another court *can on the same facts* order or decree the same custody as the first court

did, or can make a still different order than the first or second court did, one day, or one week, or one month after the prior court's decree. The resultant harm to a child, as well as to the reputation and prestige of Courts of Justice must be apparent. Under the majority opinion of this Court, all this mother (or any aggrieved party in any other custody proceeding) has to do is to retain the child when he comes to her for a week-end (or to kidnap the child), thus necessitating a (new) habeas corpus proceeding by the great-grandfather in another county in Pennsylvania, or in another state, where a different judge can make a diametrically opposite award *based on the same facts, circumstances and conditions.* In the event of a habeas corpus proceeding in another court, the case might, and as a practical matter would, likely be heard by a "friendly" judge, viz: any judge who has different ideas about child welfare, or who has a strong pride in *his* community, or an inhibition against strangers, or who because of human traits which we all possess may have different ideas about raising children or a different approach than the first or second judge who heard the previous proceedings. The net result would be interminable litigation, a disrespect for courts and a lack of faith in Justice; and the child would be but a "shuttlecock".

There was no attempt made by defendants to show a change of circumstances or conditions affecting the child's welfare during the week between the order of the Ohio court and the order of the court of Clearfield County, probably for the obvious reason that it would have been impossible; *and consequently without such proof the custody decreed by the Ohio court could not be set aside by the court of Clearfield County.*

If, however, we consider this case on its merits— and treat the decree of the Ohio Court as a nullity, as the court below and the majority opinion do—this

child because of his tender years (plus the great-grand-father's age and home) should still be awarded to his mother. This has been the well settled law of Pennsylvania ever since *Com. v. Addicks,* 5 Binney 519, 521 (1813). In that case the mother had lived in adultery with another man for several years and had had a child by him. Nevertheless, on a habeas corpus by the father for the custody of their two children, one *ten years old* and the other *seven years old,* this Court, through TILGHMAN, C. J., although strongly disapproving the mother's conduct, awarded the children to the mother saying *"it appears to us, that considering their tender age, they stand in need of that kind of assistance, which can be afforded by none so well as a mother."*

"In general, the needs of a child of tender years are best served by its mother and unless compelling reasons appear to the contrary, such child should be committed to the care and custody of its mother. Com. ex rel. Lamberson v. Batyko, 157 Pa. Superior Ct. 389, 43 A. 2d 364": *Com. ex rel. Gates v. Gates,* 161 Pa. Superior Ct. 423, 424. See also to the same effect: *Com. ex rel. Keller v. Keller,* 90 Pa. Superior Ct. 357; *Com. ex rel. Lucchetti v. Lucchetti,* 166 Pa. Superior Ct. 530; *Com. ex rel. Oliver v. Oliver,* 165 Pa. Superior Ct. 593, 69 A. 2d 445. "This is true although others who have been suitable custodians of the child have become attached to it. Com. ex rel. Miller v. Barclay, 96 Pa. Superior Ct. 315; Com. ex rel. Lamberson v. Batyko, 157 Pa. Superior Ct. 389, 43 A. 2d 364": *Com. ex rel. George v. George,* 167 Pa. Superior Ct. 563, 566, 76 A. 2d 459.

Parenthetically, we may add that it is common knowledge that a child of tender years can and does quickly form new attachments if treated with kindness and affection by those into whose care it is given; and the fact that the child will be removed to a good home outside of this jurisdiction is not controlling:

*Com. ex rel. Black v. Black*, 79 Pa. Superior Ct. 409; *Com. ex rel. Miller v. Wagner*, 160 Pa. Superior Ct. 536, 52 A. 2d 235; *Com. ex rel. Lamberson v. Batyko*, 157 Pa. Superior Ct. 389, 43 A. 2d 364.

These authorities, as well as the common experience of mankind, demonstrate what both the Ohio court and the Superior Court of Pennsylvania found,* viz: it was for the best interests and welfare of a four and one-half year old child that he be awarded to his mother. *There were "no compelling reasons for a contrary conclusion"*; indeed, there were far stronger reasons than usual why in this particular case the child should have been awarded to the mother. The Ohio court and the court of Clearfield County found that both the mother and the great-grandfather were qualified to care for the child. The majority opinion, in an attempt to bolster its reason for awarding the child to the *great-*grandfather, points out that the father lives in the same (three-room) house as his son. So far as the merits are concerned, this is unimportant, in view of the fact that no court has ever awarded the son to *this* father; and the court of Clearfield County found that the little boy showed no interest in, or affection for, his father. The fact that the mother is a practical nurse; and that the *great-grandfather* is on relief; and that the child is living in a house *without any of the modern necessities of life,* furnishes strong additional reasons, if reasons be needed, why this young child should be with

---

* The decision of the Superior Court was in accordance with the requirements of the Act of July 11, 1917, P. L. 817, Section 1; 12 P.S. §1874, which provides that appeals resulting from habeas corpus proceedings involving the custody of children shall be to the Superior Court, "who shall consider the testimony and make such order upon the merits . . . as to right and justice shall belong." See to the same effect *Com. ex rel. v. Edberg*, 346 Pa. 512, supra, and *Commonwealth ex rel. Ganster v. McGee*, 103 Pa. Superior Ct. 12, 14, 157 A. 345.

his mother. The decision of the learned trial judge seems to have been too strongly influenced by his natural pride in the great county of Clearfield and its fine citizens.

For each and every one of these reasons I would affirm the opinion of the Superior Court.